**Roosevelt BEASLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1365–93.**

Court of Criminal Appeals of Texas, En Banc.

June 28, 1995.

David L. Richards (on appeal only), Fort Worth, for appellant.

Tim Curry, Dist. Atty. and Betty Marshall, Charles M. Mallin, Anne E. Swenson and Terri Moore, Asst. Dist. Attys., Robert Huttash, Fort Worth, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

OVERSTREET, Judge.

Appellant was indicted for the felony offense of murder, V.T.C.A. Penal Code, § 19.02(a)(1), alleged to have been committed on or about the 3rd day of February 1990, in Tarrant County. He was found guilty in a trial by jury in the 372nd District Court of Tarrant County on the 13th day of November, 1992. The jury assessed punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division, and a fine of $10,000. Appellant's conviction was affirmed by the Fort Worth Court of Appeals on November 10, 1993. *Beasley v. State*, 864 S.W.2d 808 (Tex.App.—Fort

Worth 1993). We granted appellant's petition for discretionary review to decide if evidence of bad conduct generally engaged in by gang members is admissible absent a showing of a connection between such conduct and appellant.[1]

## I. SUMMARY OF PERTINENT FACTS

During the guilt/innocence phase of the trial, testimony was given by the victim that he was with the deceased and a third party at Cheddar's Restaurant on February 1, 1990 when appellant entered the restaurant along with another young man, two ladies, and a baby. The victim testified that he and his friends noticed that appellant and his male friend were wearing jeans with a black Raiders cap and a L.A. Lakers jacket. Both men also had blue bandannas hanging out of their back pockets. Subsequently, the deceased and appellant had a conversation and exchanged beeper numbers. Two days later, appellant met the deceased and the victim at a bowling alley, lured the two of them to an isolated area, shot both of them and then took their money. When the police arrived, the victim informed them that he was "shot by some Crips."

During the punishment phase of the trial, the State presented two witnesses who testified about appellant's gang membership. First, the victim testified that while in Cheddar's Restaurant on February 1st, he overheard appellant say to the deceased, "I am a part of the East-something Crips." The remainder of the testimony regarding the gang and gang membership was given by Leo Griego, a police officer from California. Officer Griego testified that he was a police officer from Barstow, California, where appellant had lived before moving to Texas, that he had been a police officer for the past twenty years, and that he had interactions with gangs including Crips for the last fifteen years. Officer Griego further explained that the Crips is a black street gang that has an "allegiance for a common goal, and they engage in violent and criminal activity." He added that specifically, "[t]heir cause is vio-

lence, criminal activity such as drug trafficking, robberies, witness intimidation."

Officer Griego explained that one manner in which Crip gang members identify themselves is through their distinguishing clothing. He explained in detail that:

> "[t]he Crips are known to wear blue garb, such as blue pants or shirts, tennis shoes, shoelaces, caps with Raider's logo on them, jackets with Raider's logo, black or dark blue shirts, in combination with other blue garb. . . ."

Officer Griego also testified that when the Crips were "Cripped out or dressed out", along with the other blue garb, they would wear blue rags or handkerchiefs on their heads or in their pockets.

Officer Griego testified that he personally knew appellant. He testified that he had seen appellant in the presence of other known Crip members, and that he had seen him wearing the type of gang clothing that he had earlier described. When asked if he knew of appellant's reputation in the community for being a peaceful and law-abiding citizen, officer Griego responded that he did know of his reputation and that it was bad.

## II. COURT OF APPEALS' HOLDING

The Second Court of Appeals affirmed the judgment of the trial court holding that the evidence admitted was not evidence of an extraneous offense and was therefore admissible. *Beasley v. State,* 864 S.W.2d 808 (Tex. App.—Fort Worth 1993). It stated that article 37.07 § 3 of the Texas Code of Criminal Procedure and the Rules of Evidence provide for the admission of evidence by the state or the defendant of anything that the court deems relevant, including the defendant's prior criminal record, his reputation, and his character. *Id.* at 810. The court of appeals rejected appellant's argument that the evidence was inadmissible because it is evidence of an extraneous offense. The court of appeals first stated that appellant's objection to the evidence being admitted was untimely,

---

1. Appellant's question for review reads as follows: Whether the court of appeals erred in ruling that it is proper for the state to introduce, for purposes of punishment, evidence of bad conduct generally engaged in by gang members, without having to link the defendant to such conduct.

and went further to explain that the testimony that was objected to was only the witness' opinion of the character and nature of the gang. *Id.* at 811. The court of appeals likened appellant's affiliation with the gang to one's religious affiliation, and reasoned that the evidence that Beasley was a member of a street gang dedicated to violence and other criminal activity is admissible at the punishment phase of the trial. *Id.* at 810–811. Lastly, because this evidence's purpose was to show only the general nature of the gang, the court of appeals found that it was unnecessary for the State to link appellant to every single kind of crime that the gang may have engaged in. *Id.*

## III. APPELLANT'S CONTENTION

Appellant claims that the evidence that was admitted regarding the conduct of the gang was all inadmissible. He maintains that the evidence that the State introduced was evidence of unadjudicated extraneous offenses of the gang. According to appellant, the State introduced evidence of these unadjudicated extraneous offenses of the gang so that the jury would consider these acts while assessing his punishment. Because the evidence introduced by the State was unadjudicated extraneous offense evidence, appellant argues that *Grunsfeld v. State,* 843 S.W.2d 521 (Tex.Cr.App.1992) controls, and consequently, admitting unadjudicated extraneous offense evidence in the punishment phase of a noncapital offense was reversible error.

In the alternative, appellant argues that in the event that this Court finds that the testimony was not unadjudicated offense evidence, the State neglected to demonstrate that appellant was a member of the Crips or that he engaged in, or had knowledge of the criminal activities attributed to the gang. To support this contention, appellant refers to *Urbano v. State,* 837 S.W.2d 114 (Tex.Cr. App.1992). Furthermore, appellant, citing *People v. Smith,* 141 Ill.2d 40, 152 Ill.Dec. 218, 565 N.E.2d 900 (1990), contends that being in the presence of gang members is insufficient alone to show that one is a gang member, and in this case, there was no clear evidence presented that appellant actually was a member of the crips gang.

## IV. STATE'S CONTENTION

The State's first contention is that this Court should dismiss appellant's petition because appellant has failed to address the court of appeals' holding that appellant's trial objection was untimely. Therefore, the State maintains that appellant is asking this Court to grant an advisory opinion. The State next contends that even if this court does decide the merits of this case, the court of appeals decision should be affirmed because the evidence was not evidence of unadjudicated extraneous offenses and consequently was properly admitted. The State, citing *Harris v. State,* 738 S.W.2d 207, 224 (Tex.Cr.App. 1986), asserts that in order to establish evidence of an extraneous offense, the evidence must demonstrate that an offense was committed and that appellant was connected with the offense. According to the State, the testimony that was given by the witness regarding gang activity was offered not as evidence of specific unadjudicated offenses of the gang or of appellant, but only as the opinion of the witness as to the gang's general nature and character, and is therefore admissible during punishment under Article 37.07, § 3(a).

The State also asserts, citing *Miller–El v. State,* 782 S.W.2d 892, 895–97 (Tex.Cr.App. 1990) and *Murphy v. State,* 777 S.W.2d 44, 63 (Tex.Cr.App.1988), that the testimony is admissible at the punishment phase as circumstances of the offense or offender. The State argues that this information is extremely relevant and the jury should be given as much relevant information as possible so that they can make the most informed decision possible concerning appellant's punishment. Additionally, it avers that "circumstances of the offender" evidence, which includes evidence of background, education and religious affiliation, is not limited to character evidence, and therefore evidence concerning appellant's gang membership is admissible.

## V. ANALYSIS

The record reveals that the objections to the disputed testimony were timely, and accordingly we will address the merits of this case. Article 37.07, § 3(a) of the Code of

Criminal Procedure provides that "[r]egardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character." Therefore, if evidence of the defendant's character or reputation is deemed relevant by the trial court, the evidence is admissible during punishment if it is permitted by the Rules of Evidence. Rule 404(c) of the Texas Rules of Evidence provides that at punishment, "evidence may be offered by an accused or by the prosecution as to the prior criminal record of the accused [and] [o]ther evidence of his character may be offered by an accused or by the prosecution."

Rule 401 of the Rules of Criminal Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ In *Ybarra v. State,* 775 S.W.2d 409 (Tex.App.—Waco 1989, no pet.), the Tenth Court of Appeals held that gang membership is admissible to show the character of the accused. The court added that "[i]f reputation of gang membership gives the jury valuable information regarding the character of the defendant it should be allowed." *Id.* The *Ybarra* court reasoned that evidence of gang membership is relevant because the jury can make a determination of the defendant's character based on the fact that the defendant is a member of a gang. *Id.*

Appellant's reliance on *Urbano* is misplaced. *Urbano v. State,* 837 S.W.2d 114 (Tex.Cr.App.1992). The case at bar can be distinguished from *Urbano* by examining the purpose of the introduction of the gang evidence in both cases. In *Urbano,* this Court held that:

"Rational jurors could not conclude beyond a reasonable doubt simply from [Urbano]'s membership in the gang that he was aware of all of the gang's rules."

*Id.* at 117. In that case, the gang membership evidence was not admitted for the jury's evaluation of the defendant's character, but to show whether Urbano knew he would advance and share in profits, which would prove the element of remuneration.

■ In this case, from all of the "gang evidence" that was presented during the punishment phase of the trial, a rational jury could have concluded that the State had established three things: 1) that appellant was a member of the Crips gang; 2) that the Crips gang was involved in misconduct; and 3) that the Crips gang had a bad reputation in the community. As far as showing appellant's gang membership, the testimony of Officer Griego revealed that he had personally witnessed appellant wearing the gang colors and clothing which indicated appellant's membership in the Crips gang. Additionally, Officer Griego testified that he had seen appellant in the presence of other known Crips gang members. The State also showed that the Crips was a gang that was involved in misconduct. Again, they accomplished this through the testimony of Officer Griego. Officer Griego testified that the gang engaged in violent and criminal behavior, "such as drug trafficking, robberies, witness intimidation." Finally, because of all of the evidence that was heard regarding the misconduct of the gang, a rational jury could conclude that the gang's reputation was indeed bad.

■ The evidence concerning appellant's gang membership is relevant because it relates to his character. This information alone however, may not be enough for the jury to make an informed decision of appellant's character. It is essential for the jury to know the types of activities the gang generally engages in so that they can determine if his gang membership is a positive or negative aspect of his character, and subsequently his character as a whole. Only after the jury has been provided with this information can there be a fair evaluation of how gang membership reflects on the gang member's character.

## VI. CONCLUSION

█ We hold that it is not necessary to link the accused to the bad acts or misconduct generally engaged in by gang members, so long as the jury is 1) provided with evidence of the defendant's gang membership, 2) provided with evidence of character and reputation of the gang, 3) not required to determine if the defendant committed the bad acts or misconduct and 4) only asked to consider reputation or character of the accused. A fair reading of Article 37.07 § 3(a) and Rule 404(c) implicates that the sentencer should be provided with all relevant evidence in order to assess fair and appropriate punishment. Accordingly, the judgment of the court of appeals is affirmed.

McCORMICK, Presiding Judge, concurring.

I concur only in the result the majority reaches in this case. I write separately to address Judge Clinton's interpretation of the post-*Grunsfeld* 1993 amendments to Article 37.07, Section 3(a), V.A.C.C.P. See *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Cr.App. 1992).

This case does not involve the application of the 1993 amendments to Article 37.07, Section 3(a). However, Judge Clinton addresses current Article 37.07, Section 3(a), in his concurring opinion. Given this Court's history of misinterpreting Article 37.07, Section 3(a), *see Grunsfeld*, and subsequent legislative action deleting "... as permitted by the Rules of Evidence ...," it seems clear, as Judge Clinton suggests, that the "plain language" of the 1993 amendments to Article 37.07, Section 3(a), grants trial courts *almost* "unfettered discretion" to "define what the issues are at the punishment phase of a noncapital trial" on a case-by-case basis. This was the State's position in *Grunsfeld* under the pre–1993 amendments to Article 37.07, Section 3(a), which this Court rejected. See *Grunsfeld*, 843 S.W.2d at 523 (State claimed admissible evidence may include *"anything* the trial court deems relevant"). The Legislature then amended Article 37.07, Section

3(a), to make it consistent with the State's position in *Grunsfeld.* Current Article 37.07, Section 3(a) means what it says. Whether this is an unconstitutional delegation of legislative authority is a separate question than what the "plain language" of current Article 37.07, Section 3(a) means.

With these comments, I concur only in the Court's judgment.

CLINTON, Judge, concurring.

At issue in this cause is whether evidence that appellant belongs to the Crips, a street gang, is admissible at the punishment phase of his non-capital prosecution for murder, notwithstanding the provisions of Article 37.07, § 3(a), V.A.C.C.P., as it read at the time of his trial in April of 1992. This is the version of Article 37.07 that we construed in *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Cr. App.1992). It has since been amended.

In 1992 Article 37.07, § 3(a) read, in relevant part:

"Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged."

In *Grunsfeld* a plurality of the Court reiterated what a plurality had said in its opinion on rehearing in *Murphy v. State*, 777 S.W.2d 44 (Tex.Cr.App.1989), about an earlier incarnation of Article 37.07, § 3(a), *viz:* that it does not exhaustively define everything that might be admissible at the punishment phase of a non-capital prosecution, but it does operate to exclude any evidence of the defendant's specific unadjudicated misconduct.[1]

---

1. The statute was amended in 1993. This amendment expressly provided for admission of

evidence of prior unadjudicated bad acts, notwithstanding Rules 404 and 405 of the Rules of

In the instant cause we are not confronted with a question of the admissibility of evidence of appellant's specific misconduct. Instead we are presented with evidence of appellant's affiliation with a group that engages in unlawful conduct in general, but no proof of specific acts of misconduct perpetrated either by appellant himself or any other member of his group. The issue is really two-fold. First, does Article 37.07, § 3(a) prohibit admission of the evidence here, as we held it prohibits evidence of specific misconduct on the part of the defendant in *Murphy* and *Grunsfeld?* Second, since the statute is not exhaustive, is the evidence here admissible quite apart from the express provisions of Article 37.07, § 3(a)? As far as I can see, these are the questions—the only questions—we granted discretionary review to address in this cause.[2]

Judge Overstreet, writing for the plurality, opines that "evidence concerning appellant's gang membership is relevant because it relates to his character."[3] Op. at 456. I have no doubt that a jury might well believe that the fact that a convicted defendant is a member of a street gang has some bearing on his character, and that that character trait (whatever it is) in turn has some bearing on

the normative judgment of what punishment ought to be imposed upon him for his particular crime. However, Professors Goode, Wellborn and Sharlot inform us that, consistent with Rule 405(a) of the Rules of Criminal Evidence, character evidence *qua* character evidence is objectionable at the punishment phase of a non-capital trial unless it takes the form of opinion or reputation testimony. See 1 Goode, Wellborn & Sharlot, Texas Practice: Texas Rules of Evidence: Civil and Criminal § 405.2.2 (2d ed. 1993), at 205. And we know that Rule 405(a) applies to decisions of admissibility of character evidence at the punishment phase, if for no other reason than the language in Article 37.07, § 3(a) to that apparent effect, *viz:* "evidence may, as permitted by the Rules of Evidence ..."[4] See Acts 1985, 69th Leg., ch. 685, § 8(b), p. 2473, eff. Aug. 25, 1985. Evidence of gang membership proffered *only* as character evidence, therefore, would appear to be inadmissible because not an acceptable method of proving character under Article 37.07, § 3(a) and Rule 405. Judge Overstreet offers no other theory to explain why evidence of gang-membership is admissible.

Criminal evidence. In fact, the amendment also deleted the phrase, "... as permitted by the Rules of Evidence ..." Thus the Legislature has rendered our holding in *Grunsfeld* defunct, at least for purposes of trial of any offense committed after September 1, 1993. See Acts 1993, 73rd Leg., ch. 900, §§ 5.05, 5.09 & 5.10, pp. 3762–64, eff. Sept. 1, 1993.

**2.** The plurality opinion notes the court of appeals' holding that appellant procedurally defaulted his claim, and the State's argument in this Court that appellant's petition for discretionary review fails to address this alternative disposition. The plurality then declares conclusorily that appellant's trial objections "were timely," and proceeds to the merits of the case. Op. at 456. The plurality thus forgets that we are a discretionary review court. This kind of peremptory disposition of an issue does not fulfill our function in that capacity to develop and clarify the law. Cf. *Arcila v. State*, 834 S.W.2d 357, 360 (Tex.Cr.App.1992) (in our discretionary review capacity we are "the caretaker of Texas law, not the arbiter of individual applications."). What the court of appeals held was forfeited was an "extraneous offense" objection. *Beasley v. State*, 864 S.W.2d 808, 811 (Tex.App. Fort Worth,

1993). The merits of the claim the plurality reaches is not an extraneous offense issue *per se*. In any event, because I consider the procedural default issue jurisprudentially insignificant, and because the State prevails on the merits anyway, I will not attempt to resolve that issue independently in this separate opinion.

**3.** Both the plurality and the dissenting opinions agree that the evidence was sufficient to establish appellant was in fact a member of the Crips. I fully agree.

**4.** The phrase "as permitted by the Rules of Evidence" was deleted from Article 37.07, § 3(a) by the 1993 legislative amendment. See n. 1, *ante*. After noting this deletion, Professors Goode, Wellborn and Sharlot nevertheless opine that "witnesses called, under Criminal Rule 404(c), by either the prosecution or defense to testify at the punishment phase to the defendant's character are restricted on direct to testimony in the form of reputation or opinion." *Goode*, et al., at § 404.7, p. 190, n. 2, and § 405.2.2, p. 205, respectively. Thus it may well prove that even after the 1993 deletion, character evidence at the punishment phase of a non-capital trial will be limited to opinion or reputation testimony. Of course we need not decide that question today.

For his part, borrowing from First Amendment jurisprudence, Judge Maloney opines that it is "necessary" to show more than the mere fact that appellant was affiliated with the Crips. Op. at 465. It must also be demonstrated that he "intended to further the illegal aims" of the Crips,—indeed, that he "engaged in gang-related illegal activity"—before evidence that he was affiliated with them may be deemed "relevant" to his sentencing. Op. at 463 & 465, respectively. Although he made glancing reference to the First Amendment at trial, appellant does not raise First Amendment concerns in his petition for discretionary review. Whether proof of appellant's gang affiliation violates the First Amendment is therefore not an issue that is before us *per se* in this cause. Whether it is "necessary" for the State to establish appellant "engaged in gang related activity" before it can be said that his gang membership is "relevant" depends, it seems to me, on what it means to say that evidence is "relevant" in the punishment phase of a non-capital trial. Judge Maloney does not address this question.

Judge Maloney further suggests that absent some evidence of appellant's actual involvement in gang-related activities, evidence of his membership would be "unfairly prejudicial." Op. at 468. But until he explains why he thinks gang-membership is relevant at all, one cannot tell how he thinks lack of evidence that appellant engaged in gang-related illegal activity adversely affects the probative value of evidence of membership compared to its tendency to persuade the jury to decide punishment on some illegitimate basis. See Tex.R.Cr.Evid., Rule 403. In short, until he articulates a theory to explain why gang-membership is relevant at punishment, one cannot tell how Judge Maloney knows that evidence appellant actually engaged in gang-related illegal activity is essential, either to complete the inference (whatever it is), or to render that inference more probative than prejudicial.

The truth is that determining what is "relevant" at the punishment phase of trial in a non-capital case is for the most part practically impossible. As we described in some detail in our plurality opinion in *Murphy*:

"The problem lies in defining what the particular 'issues' are that evidence may or may not be 'relevant' to prove. We have remarked before that '[t]he material issue during the punishment phase is, obviously, what punishment to assess[.]' *Hoffert v. State,* 623 S.W.2d 141, 145 (Tex.Cr.App. 1981). While that is indeed obvious, it is not especially helpful for purposes of deciding relevance.

The facts 'of consequence' [quoting Tex. R.Cr.Evid., Rule 401] at the guilt phase of trial are narrowly drawn by or readily extrapolated from penal provisions and statutory justifications. [Evidence] may be offered as proof of an ultimate fact, such as identity or culpable intent, or it may be offered to establish an evidentiary fact, such as motive, from which an ultimate fact may be inferred. In either case we know what the material issues are because the Legislature has supplied them. Thus we have a fixed point by which to navigate questions of relevance at the guilt phase of trial. The same is not true of the punishment phase. There, aside from certain exceptions, the 'factfinder' does not determine the existence of [discrete] facts. Deciding what punishment to assess is a normative process, not intrinsically fact-bound. Because the material issue at punishment is so indistinct, relevancy of proffered evidence cannot be determined by deductive processes. To extend the nautical metaphor, we have been given a rudder to steer, but no polestar to steer by.

In reality, what is 'relevant' to determining proper punishment is more a question of policy than of logic. In creating the separate punishment proceeding in 1965, the Legislature clearly intended to remove the blinders inherent in a unitary trial. Unfortunately, outside of Article 37.07, § 3(a), supra, it has given no clear guidance as to what considerations should inform the jury's punishment decision.

777 S.W.2d at 62–63. For these reasons it seems to me for the most part unhelpful even to speak in terms of the "relevance" *vel non* of evidence at the punishment phase of a non-capital trial.

To compound the problem, shortly before we handed down our opinion on rehearing in *Murphy,* the Legislature amended Article 37.07, § 3(a) to provide, as it now does, that evidence may be offered at the punishment phase of a non-capital trial "as to any matter the court deems relevant to sentencing ..." Thus, the Legislature seems to have taken "the ultimate decision of what is 'appropriate' for a jury to consider in assessing punishment out of the hands of this Court and placed it squarely in the hands of the trial court." *Grunsfeld v. State,* supra, at 542 (Clinton, J., concurring). As I noted at greater length in *Grunsfeld:*

> "By providing that evidence as to whatever 'matter' the trial court deems relevant to punishment is admissible at that phase of trial the Legislature appears, in light of *Murphy* on rehearing, to have assigned to the trial judge the more significant task of deciding, apparently case by case, what 'matters' are appropriate to inform the jury determination as to proper punishment within the prescribed range. Outside of 'prior criminal record,' 'general reputation' and 'character,' however, the Legislature still has not supplied any particular reference, any 'polestar,' if you will, by which the trial court can make the essential 'relevancy' determination. It is apparently left to the trial court in its unfettered discretion to decide what 'matter is relevant.' Moreover, because the trial court is legislatively assigned the task of deciding criteria for 'relevancy,' its decision may be essentially unreviewable by an appellate court. After all, if the trial court's discretion includes saying what 'matter is relevant,' what relevance *is,* an appellate court can hardly say the trial court abused its discretion by finding a particular piece of evidence 'relevant.'"

*Id.,* at 547.

It is tempting to hold, accordingly, that evidence appellant is a member of the Crips is admissible, not because it is "relevant" as character evidence,[5] as the plurality holds today, but because the trial judge presum-

ably "deemed" it "relevant" to some other undisclosed purpose, and neither the court of appeals nor this Court is empowered to tell him he erred to say so. I resist the temptation, but only because to interpret current Article 37.07, § 3(a) to grant the trial court such "unfettered discretion" to define what the issues are at the punishment phase of a non-capital trial would be, in my view, to put our imprimatur upon an unconstitutional delegation of legislative authority, in violation of Article II, § 1 of the Texas Constitution. *Grunsfeld,* supra at 543–44 & 547 (Clinton, J., concurring). We are not at liberty to do that.

In order to avoid this unconstitutional construction of the phrase, "any matter the court deems relevant to sentencing," I suggested in *Grunsfeld* that we interpret it to grant the trial court only a very limited discretion. I proposed that we continue to construe Article 37.07, § 3(a) as we had on rehearing in *Murphy, viz:* to authorize the trial court to admit more than just evidence of character in the form of prior criminal record, reputation, and opinion (and now, since the 1993 amendment, any specific unadjudicated misconduct the State can prove beyond a reasonable doubt the defendant committed). We should construe it also to "give the trial court discretion to admit evidence having any tendency to prove those matters that are traditionally recognized categories of 'circumstances of the offense and the offender[.]'" 843 S.W.2d at 547.

These "traditionally recognized categories" derive from the discussion in *Murphy.* After pointing out that determining "relevance" *per se* at the punishment phase of a non-capital trial is at best problematical, see *ante* at 455–456, we continued:

> We do know, nevertheless, that certain information has been widely regarded as 'relevant' to assessment of punishment. * * * Modern penological thought ... holds that, along with the circumstances of the offense, 'highly relevant—if not essential—to ... selection of an appropriate

---

5. It undoubtedly *is "relevant"* to prove character. But under Rule 405 of the Rules of Criminal Evidence, it is not *admissible* to prove character. See *ante* at 454–455. To hold evidence of appel-

lant's gang membership admissible, the trial court would have to "deem" it "relevant" to some purpose other than its tendency to establish his character.

sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949). These factors are not 'relevant' in the sense that they tend to make more or less probable some identifiable issue of ultimate fact at the punishment phase. Calling circumstances of the offense and the offender 'relevant' is really no more than to say we deem that information appropriate for the factfinder to consider in exercise of its unfettered discretion to assess whatever punishment within the prescribed range it sees fit. In the policy gap left by the Legislature, this Court has held evidence of 'the circumstances of the offense itself or . . . the defendant himself' to be admissible at the punishment phase. *Stiehl v. State,* 585 S.W.2d 716, 718 (Tex. Cr.App.1979)."

777 S.W.2d at 63. See also *Miller–El v. State,* 782 S.W.2d 892, 895–96 (Tex.Cr.App. 1990); *Stavinoha v. State,* 808 S.W.2d 76, 78–79 (Tex.Cr.App.1991).

One "circumstance of the offender" that we identified in *Murphy* as "appropriate" for a sentencing jury to consider apart from its "relevance" as character evidence is "religious affiliation." *Id.,* at 64. Noting this, the court of appeals in the instant cause opined:

"It seems reasonable that if evidence of [appellant's] religious affiliation is an appropriate consideration in determining his punishment, then his affiliation with a gang dedicated to crime and violence is also an appropriate consideration. We therefore hold that the trial court did not err in allowing evidence of [appellant's] affiliation with the Crips gang or evidence of the gang's dedication to crime and violence."

*Beasley v. State,* 864 S.W.2d 808, at 810–11 (Tex.App.—Fort Worth, 1993).

It is hard to assail this holding. It is hard to assail, not because it is indisputably correct, but because we cannot test it by any purely rational process. As we said in *Murphy,* deciding what punishment to impose is a normative process. 777 S.W.2d at 63. It is not a matter of finding the existence *vel non* of discrete facts, but is instead a process of evaluating just deserts. In this context, all we can really say about religious affiliation is that, to the extent it seems to say something positive about a defendant, we intuitively surmise that at least some jurors would want to know about it in making that evaluation. Thus we say it is "appropriate" to submit it to the jury at the punishment phase of a non-capital trial. *Id.* If we are willing to credit that intuition, it would be strange not to give equal credit to the intuition that some jurors might want to know about appellant's affiliation with the Crips, inasmuch as it seems to say something negative about him. (Surely the fact that it seems to say something negative rather than something positive cannot provide a valid basis for distinction!) To this extent the court of appeals was undoubtedly justified in concluding that appellant's membership in the Crips was an admissible "circumstance of the offender" within the contemplation of our discussion in *Murphy.*

Appellant argues that even if evidence of the bare fact of his membership in the Crips were admissible, evidence of the gang's activities is barred by our opinion in *Grunsfeld.* In this appellant is simply mistaken. In *Grunsfeld* we held, as we had earlier held in *Murphy,* that evidence of specific misconduct on the part of the *defendant* was inadmissible under Article 37.07, § 3(a), because not part of "the prior criminal record of the defendant." *Grunsfeld,* supra, at 524–25; *Murphy,* supra, at 63–64. But Article 37.07, § 3(a) does not speak to the admissibility of evidence of the general misconduct of others with whom the defendant might associate. It certainly does not expressly prohibit admission of that evidence. And because Article 37.07, § 3(a) is not an exhaustive provision, the question becomes whether evidence of the misconduct of those with whom the defendant associates is an "appropriate" consideration for the jury in assessing punishment in a non-capital case.[6]

In his dissent Judge Maloney concludes that at best the court of appeals' religious affiliation "analogy" would admit of evidence

---

6. It is well to remember that appellant has raised no First Amendment issue in this cause.

of the bare *fact* of appellant's membership in the Crips, but not of the particulars of the gang's activities. Op. at 466–467. With this I cannot agree. That defendants often times present evidence of affiliation with, say, the Baptist Church, without also presenting evidence of the purpose, function and activities of that denomination, is probably just a testament to the fact that, in general parameters at least, those are commonly known and do not require evidentiary elaboration. If they were not commonly known, however, surely a defendant who wished to establish his affiliation with the Baptist Church would be allowed to prove these background facts—indeed, if he did not, evidence that he was a Baptist might later be struck because the proponent did not show it to have any material significance even to the vague issue of "what punishment to assess[.]" *Murphy*, supra, at 62, citing *Hoffert*, supra, at 145. See *Fuller v. State*, 829 S.W.2d 191, 198–99 (Tex. Cr.App.1992); Tex.R.Cr.Evid., Rule 104(b). The purpose, function and activities of the Crips is widely, but not universally, known. Not every juror will know what it typically means to be a member of a street gang. The "circumstance" that appellant is a Crip proves nothing whatsoever, whether "appropriate" under *Murphy* or not, to a juror who does not know the first thing about what the Crips are.

For these reasons I cannot conclude that the court of appeals erred to hold that evidence of appellant's gang membership and of the gang's activities was admissible in the instant cause. Having said this, I hasten to add a few caveats. First, I agree with Judge Maloney that the jury would not be permitted to infer from appellant's affiliation with the Crips that he himself has committed specific acts of misconduct, for that would be to admit evidence for a proposition not allowed under Article 37.07, § 3(a) as of the time of his trial, at least as this Court interpreted it in *Grunsfeld*. Had appellant requested a limiting instruction in the punishment charge requiring the jury to eschew any such inference, in my view he would have been entitled to it.

Second, unlike the plurality, I do not believe we can say that evidence of appellant's gang affiliation, although relevant to his character, is admissible as evidence of character *per se*, under Article 37.07, § 3(a) and Rule 405. See *ante* at 458–459. Accordingly, appellant would also have been entitled upon request to a limiting instruction that the jury must not consider appellant's membership in the Crips as any evidence of his character *per se*. As to what inference can be drawn from the "circumstance" of his gang membership besides his character *per se*, I am, quite frankly, unsure. But I cannot say categorically that a jury could not find *anything* about this "circumstance of the offender" that was useful to its evaluation of a just punishment apart from what it says about appellant's character. Until I can say that, I am unable to fault the court of appeals' conclusion that the evidence is admissible under our holding in *Murphy*.

In short, Article 37.07, § 3(a) does not necessarily operate to prohibit admission either of the fact of appellant's affiliation with the Crips, or of background evidence informing the jury of the purpose, function and general activities of that group, without which the evidence of his affiliation may be altogether meaningless. Only if the State expressly proffers this evidence solely as character evidence *per se* does Article 37.07, § 3(a), in tandem with Rule 405, prohibit its admission. To the extent the State may offer it as a "circumstance of the offender," bearing on proper punishment in some respect apart from his character *per se*, it should be admitted, Article 37.07, § 3(a) notwithstanding.

The State did not limit its proffer of evidence to whatever tendency it had to prove appellant's character *per se*. Nor did appellant request a limiting instruction requiring that the evidence not be considered for that purpose, as, in my view, he would have been entitled to. Accordingly, I join the judgment of the Court affirming the judgment of the court of appeals. However, I cannot join the plurality opinion.

MEYERS, J., joins.

MANSFIELD, Judge, concurring.

I join the judgment of the Court for the reasons stated in my concurring opinion in

*Anderson v. State,* 901 S.W.2d 946 (Tex. Crim.App.), decided this day.

MALONEY, Judge, dissenting.

The plurality holds the evidence of gang membership admissible at punishment, noting that "it is not necessary to link the accused to the bad acts or misconduct generally engaged in by gang members...." *Beasley v. State,* Op. at 457 (Tex.Crim.App. June 28, 1995). I disagree. The court of appeals did not err in finding that the evidence was sufficient to establish beyond a reasonable doubt that appellant was a member of the Crips gang and that the Crips gang was involved in illegal activities. Nevertheless, the evidence is insufficient to show that appellant intended to further the illegal activities of the gang. Accordingly, the gang membership testimony is of little relevance to sentencing and is unfairly prejudicial to appellant.

When the State indicates its intention to offer evidence of gang membership during punishment, a trial court should carefully evaluate the propriety of its admission. I suggest the following outline:

(1) Is the evidence of defendant's membership sufficient?

(2) Is it "relevant to sentencing" under Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a)?

(3) Is it admissible under the Rules of Evidence?

## I.  Sufficient Evidence of Membership

In *United States v. Lemon,* 723 F.2d 922, 941 (D.C.Cir.1983), the District of Columbia Circuit Court outlined a three-part test to determine the sufficiency of membership evidence. The court held that membership evidence may not be admitted at punishment unless the evidence is sufficient to establish that the defendant is a member of the group at issue, the group's aims are illegal, and the defendant intended to further those illegal aims.[1] That court held that the sentencing judge's reliance on information about the defendant's alleged association with the Black Hebrews was improper absent any evidence linking defendant to the illegal activities of the group. The court cautioned that the First Amendment would be violated "if defendant's illegal intent could simply be inferred from evidence of his association with members of the group." *Id.* at 940. The court further explained, "[T]here must be sufficiently reliable evidence of the defendant's *connection to illegal activity within the Black Hebrews* to insure that he is not being given a harsher sentence for mere association with the group...." *Id.* (emphasis added).

This Court, in *Fuller v. State,* 829 S.W.2d 191, 197–98 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993), applied the test articulated in *Lemon* to evidence of prison gang membership. We reasoned that, because or-

---

1. A proposed amendment to the Organized Crime chapter of the Texas Penal Code offered during the 74th Legislature defines a "criminal street gang" as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." Tex.S.B. 294, 74 Leg., R.S. (1995).

At the federal level, recent legislation enhancing the punishment for gang-related offenses uses the following definition:
(a) Definitions.... "[C]riminal street gang" means an ongoing group, club, organization, or association of 5 or more persons—
(A) that has as 1 of its primary purposes the commission of 1 or more of the criminal offenses described in subsection (c);
(B) the members of which engage, or have engaged within the past 5 years, in a continuing series of offenses described in subsection (c); and

(C) the activities of which affect interstate or foreign commerce.

\* \* \* \* \* \*

(c) Offenses.  The offenses described in this section are
(1) a Federal felony involving a controlled substance ... for which the maximum penalty is not less than 5 years;
(2) a Federal felony crime of violence that has as an element the use or attempted use of physical force against the person of another; and
(3) a conspiracy to commit an offense described in paragraph (1) or (2).
Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, Ch. 26 § 521(a) & (c), 1994 U.S.C.C.A.N. (108 Stat.) 1796, 2034 (1994).

ganizations with illegal aims are not protected by the Constitution, "neither is membership *with intent to further those aims.*" *Fuller,* 829 S.W.2d at 196 (emphasis added). We held the gang membership evidence inadmissible because it was "woefully insufficient" and "legally inadequate to connect Appellant with the gang in any meaningful way." *Id.* at 198. The only evidence offered to show Fuller's connection with a prison gang was the report of an inmate "whose inarticulate and rambling testimony is almost impossible to decipher." *Id.* at 197. At best, the inmate's testimony suggested that the defendant once mentioned the gang in conversation and "that he might have expected it to furnish him protection while in prison." *Id.* at 198. We accordingly held:

> [P]roof in the abstract of that organization's beliefs and activities was ultimately irrelevant to any issue at the punishment phase of its trial. Without other evidence *sufficient for a rational finding that Appellant was actually a member of such organization or that he subscribed to its*

*cannon of violence,* the testimony in question did not increase the probability that he would be violent in the future.

*Id.* (emphasis added). We also observed that "proof of an organization's violent practices is not ultimately relevant to the sentencing of a specific individual without proof of that individual's membership in the organization." *Id.* at 196 n. 2 (discussing *Dawson v. Delaware,* 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992)). In essence, the *Fuller* Court held that the evidence did not meet the first prong of the *Lemon* test; that is, the testimony was insufficient to establish that Fuller was a member of the prison gang. *Id.* at 198.

At issue in the instant case is the sufficiency of evidence regarding the third prong of the *Lemon* test, the intent to further the illegal aims of the group.[2] Because direct evidence of a defendant's intent is probably unavailable, "there must be sufficiently reliable evidence of the defendant's connection

---

**2.** In his concurring opinion, Judge Clinton takes us to task for "borrowing from First Amendment jurisprudence" because "appellant does not raise First Amendment concerns in his petition for discretionary review." *Beasley,* Op. at 459 (Clinton, J., concurring). Judge Clinton's criticism is misplaced for three reasons.

First, the *Lemon* test is not strictly a First Amendment test; *Lemon* addresses both First Amendment and relevancy concerns because the two are inextricably linked in this context. For example, in *Dawson,* the Supreme Court stated the issue before the court:

> The question presented in this case is whether the *First and Fourteenth Amendments* prohibit the introduction in a capital sentencing proceeding of the fact that the defendant was a member of an organization called the Aryan Brotherhood, where the evidence has *no relevance* to the issues being decided in the proceeding.

*Dawson,* 503 U.S. at 160, 112 S.Ct. at 1095 (emphasis added). The Supreme Court ultimately held:

> Dawson's *First Amendment rights* were violated by the admission of the Aryan Brotherhood evidence in this case, because the evidence proved nothing more than Dawson's abstract beliefs.... [W]e cannot find that evidence was properly admitted as *relevant character evidence.*

*Dawson,* 503 U.S. at 165, 112 S.Ct. at 1098 (emphasis added). In *Fuller,* this Court held that proof of an organization's violent practices is "not ultimately relevant to the sentencing of a

specific individual without proof of that individual's membership in the organization." *Fuller,* 829 S.W.2d at 196 n. 2. Thus, because appellant's arguments in the instant case discuss the issue in "relevancy" terms, we cannot ignore *Fuller, Dawson,* and *Lemon,* which are directly on point and recognize the interconnectedness of relevancy and the First Amendment in this context.

Second, our opinion addresses the heart of the ground upon which review was granted: "Whether the court of appeals erred in ruling that is [sic] proper for the State to introduce, for purposes of punishment, evidence of bad conduct generally engaged in by gang members, without having to link the defendant to such conduct." Again, to resolve this issue, we cannot be faulted for turning to authority that is directly on point.

Third, though it does not cite *Lemon,* the court of appeals' opinion below parallels the *Lemon* analysis. The court of appeals held that the evidence was sufficient to establish beyond a reasonable doubt that appellant was a member of the Crips, the first prong of the *Lemon* test. *Beasley,* 864 S.W.2d at 811. In the court of appeals, appellant did not challenge the trial court's finding that members of the Crips engaged in illegal activities, the second prong. However, the court of appeals addressed appellant's contention that there was no evidence that he participated in any of the illegal activities attributed to the Crips, the third prong of the *Lemon* test. *Id.* Accordingly, it is not improper, in reviewing the opinion of the lower court, to include *Lemon* in our analysis.

to illegal activity" within the group "to insure that he is not being given a harsher sentence for mere association with the group...." *Lemon,* 723 F.2d at 940. In other words, a defendant's connection to the illegal activities of a group may be established by evidence of the defendant's intent to further, participation in, or approval of those illegal activities. This is particularly important in the street gang context since gang membership is not monolithic, and the literature indicates three generally recognized levels of gang membership. *E.g.,* Susan L. Burrell, *Gang Evidence: Issues for Criminal Defense,* 30 SANTA CLARA L.REV. 739, n. 2 & n. 45 (1990) (citing I. Spergel, *Youth Gangs: Problem and Response: A Review of the Literature* 64–65 (1989); Atty. Gen. Youth Gang Task Force, Dept. of Justice of the State of California, *Report on Youth Gang Violence in California* (June 1981)). At the top level are "hardcore" members, who are "those few who need and thrive on the totality of gang activity." *Id.* at n. 45. The hardcore members constitute the leadership of the gang, and the gang's level of violence is largely determined by their ability to orchestrate the others into action. At the mid-level of membership are the "associates," who "associate with the group for status and recognition." *Id.* The associates may wear signature gang clothing or participate in the social functions of the group. The lowest level of membership includes the "peripherals" or "fringe members" who are tangentially related to the gang. The peripherals "move 'in and out' on the basis of interest in the activity or activities." *Id.* Given these variations in membership, proof that a defendant engaged in gang-related illegal activity is necessary.

It is difficult to fully understand street gangs because the social ties and criminal purposes within the organizations may be indistinguishable. Jeffrey J. Mayer, *Individual Moral Responsibility and the Criminalization of Youth Gangs,* 28 WAKE FOREST L.REV. 943, 947 (1993). Mayer contends that "[g]angs are, and always have been, groups of youths formed for many of the same motives that youths have always organized themselves—*friendship and social identity* as well as the pursuit of delinquent or criminal activities." *Id.* at 949 (emphasis added); *see also* Martin S. Jankowski, *Islands in the Street: Gangs and American Urban Society* 42–43 (1991) (stating that many individuals join gangs because they are the "primary social institution" of the neighborhood). Consequently, "[c]lothing and outward symbols of gang consciousness are often unrelated to a criminal purpose." Mayer, 28 WAKE FOREST L.REV. at 966.[3]

Determining whether illegal activity engaged in by a defendant is "gang-related" poses additional problems. The United States Sentencing Commission has recognized the difficulty in determining the motivation or purpose of street gangs. *See* United States Sentencing Commission, *Special Report to Congress: The Violent Crime Control and Law Enforcement Act of 1994* at 45 (April 1995) (draft). The Report discusses the propriety of presuming that a gang member who engages in an illegal activity is motivated by his gang membership. This presumption precludes the possibility that an individual who is affiliated with a gang may commit illegal acts on his own behalf. *Id.* The Report points out that drug offenses and violent crimes may be "primary" purposes of a gang or typical activities of the type of person gangs attract rather than activities sponsored by the gang itself. It is also possible that these activities occur as a gang strives to fulfill its "true" purposes, such as

---

3. Joining a gang or staying in a gang is not always a voluntary act of the individual member:

Certain social behavior, such as association with gang members and knowledge of gang signs, also may be *a matter of survival.* Young males may have to make peace with local gangs to go to school, work, or merely walk around the neighborhood. In other circumstances, markers of gang activity blend with the traits of young minorities.

Mayer, 28 WAKE FOREST L.REV. at 961 (emphasis added). Accordingly, imputing the criminal activities of the gang to an individual member may not be warranted:

As a practical matter, a local teenager may have a difficult time *not* associating with gang members. Close association is only relevant if one can infer a criminal purpose from the association, but social realities demonstrate that this inference is often unwarranted.

*Id.* at 966.

territoriality, status, or controlling human behavior.

Further, prosecutors nationwide define "gang-related" crime in divergent ways. In a study conducted by the National Institute of Justice, approximately forty-four percent of 368 prosecutors in large jurisdictions agreed with the definition "any crime committed by a gang member," while an equivalent percentage opted for the more narrow definition "only a crime committed by a gang member that is related to gang activity." National Institute of Justice of the U.S. Department of Justice, *Research in Brief* at 3 (Feb.1995). This lack of uniformity in defining "gang-related" activity compels that trial judges discern whether the evidence that a defendant engaged in illegal activity indicates that his conduct was motivated by or related to his gang membership, thus comporting with the latter definition of "gang-related." The broader definition, "any crime committed by a gang member," does not satisfy the *Lemon* test applied by this Court in *Fuller*, 829 S.W.2d at 197–98.

## II. Relevant to Sentencing

The court of appeals in the instant case held that evidence that appellant is a member of a gang dedicated to violence and other criminal activity is admissible at punishment under Article 37.07, § 3(a) of the Texas Code of Criminal Procedure, which at the time of trial, provided in relevant part:

> [E]vidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character.[4]

As we noted in *Grunsfeld v. State*, 843 S.W.2d 521, 524 (Tex.Crim.App.1992), *superseded by statute*, the list following the word "including" is not exclusive, and other evidence is admissible so long as it is deemed relevant to sentencing. *See* Code Construction Act, Tex.Gov't Code § 311.005(13) (defining "including" as a term of enlargement and not of limitation or exclusive enumeration); *Murphy v. State*, 777 S.W.2d 44, 64 (Tex. Crim.App.1988) (opinion on reh'g), *superseded by statute* (holding that Article 37.07, § 3(a) "is not exhaustive in setting out evidence admissible at the punishment phase to show circumstances of the offender."). While prohibiting evidence of extraneous unadjudicated offenses,[5] this Court has held admissible various types of evidence outside the ambit of "prior criminal record, general reputation, and character," including family background, religious affiliation, education, and employment history. *Murphy*, 777 S.W.2d at 61; *Allaben v. State*, 418 S.W.2d 517, 519 (Tex.Crim.App.1967), *superseded by statute*, *Murphy*, 777 S.W.2d 44. This evidence is usually admitted under the rubric of "circumstances of the offense" or "circumstances of the offender." *E.g., Miller–El v. State*, 782 S.W.2d 892, 895–97 (Tex.Crim.App. 1990); *Murphy*, 777 S.W.2d at 63; *Stiehl v. State*, 585 S.W.2d 716, 718 (Tex.Crim.App. 1979), *cert. denied*, 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 (1981).[6] "Circumstances of the offense" and "circumstances of the offender" are admissible not because they address some issue other than character; rather, they inform the jury about the defendant as a person. This information is relevant in that it assists the jury in assessing punishment. *See Murphy*, 777 S.W.2d at 67.

Unlike sentencing in the capital context where juries are instructed to answer special issues in the affirmative or the negative, Tex.Code Crim.Proc.Ann. art. 37.071, noncapital juries are instructed to "affix punish-

---

4. This case was tried before Art. 37.03, § 3(a) was amended in 1993 to allow evidence of extraneous offenses or bad acts that are shown beyond a reasonable doubt to have been committed by the defendant. *Grunsfeld*, 843 S.W.2d at 526.

5. *See supra* note 4.

6. Where the defendant requests probation, we have permitted a broader range of evidence, allowing any evidence, including unadjudicated offense evidence, that is "relevant to the application for probation." *E.g., Davis v. State*, 478 S.W.2d 958, 959 (Tex.Crim.App.1972); *Allaben*, 418 S.W.2d at 519 (admitting evidence that defendant had sought psychiatric treatment for his sexual problems). In the instant case, although appellant had requested probation, the State does not argue on appeal that the evidence at issue is relevant to his application for probation.

ment." [7] Thus, any matter is arguably "relevant" to sentencing if it assists the jury in affixing the appropriate punishment.[8] However, this Court has never held that evidence of the illegal purposes or activities of a group absent a connection to the defendant is somehow "relevant" to sentencing.

### A. Gang Evidence in Capital Murder Sentencing

The Supreme Court's decision in *Dawson*, 503 U.S. 159, 112 S.Ct. 1093, a capital murder case where the prosecution sought to use gang evidence to establish statutory aggravating circumstances at the sentencing hearing, provides some insight into how gang membership evidence might be deemed "relevant" in the capital or noncapital sentencing context. At issue in *Dawson* was testimony that the defendant belonged to a prison gang and a two sentence stipulation about the gang. The stipulation explained:

> "The Aryan Brotherhood refers to a white racist prison gang that began in the 1960's in California in response to other gangs of racial minorities. Separate gangs calling themselves the Aryan Brotherhood now exist in many state prisons including Delaware."

*Id.* at 162, 112 S.Ct. at 1096 (quoting the trial court record). The Supreme Court held that the First and Fourteenth Amendments prohibit the introduction of gang-related evidence where the evidence "[has] no bearing on the issue being tried." *Id.* at 168, 112 S.Ct. at 1099. Because the stipulation did

7. In the instant case, the jury was instructed as follows:
> It now becomes your duty to affix the punishment to be assessed against the Defendant.... You are instructed that in fixing the Defendant's punishment ... you may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case and the law as submitted to you in this charge....
> [You shall affix punishment] by a full, fair and free exercise of the opinion of the individual jurors, under the evidence admitted before you....
> You are the exclusive judges of the facts proved, of the credibility of the witnesses, and the weight to be given to the testimony....

8. In his concurring opinion, Judge Clinton criticizes us for failing to articulate "a theory to

not indicate that the Aryan Brotherhood committed any unlawful or violent acts, or had endorsed such acts, the Court held that the evidence was not relevant to any aggravating circumstance. The Court concluded that Dawson's First Amendment rights were violated because the evidence proved nothing more than his abstract beliefs. *Id.* at 166, 112 S.Ct. at 1098.

This Court has held that evidence of prison gang membership under the capital murder sentencing statute, Tex.Code Crim.Proc.Ann. art. 37.071, does not violate due process where the State presented evidence that the defendant was involved in criminal activity *that flowed directly from his gang membership. Hernandez v. State,* 819 S.W.2d 806, 816–17 (Tex.Crim.App.1991) (emphasis added). An inmate testified that Hernandez was a member of the "Texas Syndicate" and "that to be a member [he] had to be a cold-blooded killer; that [he] had agreed to kill someone; and that [he] agreed 'to deal' heroin in prison." *Id.* at 816.

The instant case differs from *Hernandez* in two important respects. First, Hernandez was sentenced under Article 37.071, not 37.07 which was at issue in the case at hand. Second, our holding in *Hernandez* was based, at least in part, on evidence that Hernandez was involved in criminal activity "that flowed directly from his gang membership." In contrast, the ground for review granted in the instant case poses the following query:

explain why gang membership is relevant at punishment...." *Beasley*, Op. at 459 (Clinton, J., concurring). I note that we reach the same conclusion as Judge Clinton as to how this evidence could be deemed "relevant to sentencing" by the trial court. We both conclude that gang membership evidence may be admitted under the rubric of "circumstances of the offense" or "circumstances of the offender." *Compare supra* part II *with Beasley,* Op. at 460–461 (Clinton, J., concurring). We observe that "circumstances of the offense" and "circumstances of the offender" are admissible because they inform the jury about the defendant as a person. *Supra* p. 466. Accordingly, it is appropriate to consider appellant's claim that the probative value of this evidence, that is, what it may tell us about the defendant as a person, is outweighed by its prejudicial effect. *See infra* part III.

Whether the Court of Appeals erred in ruling that is [sic] proper for the State to introduce, for purposes of punishment, evidence of bad conduct generally engaged in by gang members, without having to link the defendant to such conduct?

## B. Religious Affiliation Analogy

In reaching its conclusion that the evidence was admissible under Article 37.07, § 3(a), the court of appeals reasoned that if evidence of religious affiliation is an appropriate consideration in determining punishment, then evidence of gang membership is likewise admissible. *Beasley,* 864 S.W.2d 808, 810–11 (Tex.App.—Fort Worth 1993). I would agree with that analogy if the testimony at issue here concerned gang membership only. However, the testimony at issue in the instant case goes beyond membership: It concerns the beliefs, purposes, and activities of the gang. The court of appeals failed to make this important distinction in drawing the analogy. In cases where we have held religious affiliation admissible, the evidence has related to *membership* or affiliation only; we have not held admissible evidence of the *beliefs, purposes, and activities* of the affiliated group. *See Grunsfeld,* 843 S.W.2d at 524 n. 7; *Murphy,* 777 S.W.2d at 64 (opinion on reh'g); *see also Coleman v. State,* 442 S.W.2d 338, 340 (Tex.Crim.App.1969) (holding harmless trial court's erroneous exclusion of testimony of defendant's steady employment); *Miller v. State,* 442 S.W.2d 340, 349 (Tex.Crim.App.1969) (holding harmless trial court's erroneous exclusion of testimony as to defendant's membership in church and attendance at church services "most of the time.").

During the punishment phase of the instant case, the State elicited the following testimony from Officer Griego, a veteran police officer from California who testified that he had worked with the Crips for fifteen years:

> Q: [State] What is the purpose of the Crip gangs?

A: [Griego] The Crips have an allegiance for a common goal, and they engage in violent and criminal activity.

> \*     \*     \*     \*     \*     \*

A: [Griego] Their cause is violence, criminal activities such as drug trafficking, robberies, witness intimidation.

For illustrative purposes, an example of analogous testimony is as follows:

> Q: What is the purpose of the Baptist Church?
> A: The Baptist Church is dedicated to the worship of Jesus Christ and to performing charitable acts in the community.

> \*     \*     \*     \*     \*     \*

> Members of the Church engage in good works, such as assisting in soup kitchens, administering to the sick, and caring for the homeless.

Absent evidence that a defendant engaged in any of the good works above, this testimony poses relevancy problems not present in testimony of membership only. That is, once sufficient evidence of a defendant's membership in an organization has been presented to the court, testimony regarding membership may be admitted as relevant to the sentencing process. While the testimony listing the types of activities of the group may be relevant evidence of the *group*'s character, it is less clear how it amounts to evidence of a *defendant*'s character, particularly when there is little to no evidence linking a defendant to the specific activities mentioned.

## III. Rules of Evidence

If the trial court concludes that the State has introduced sufficient evidence of membership and that the proposed testimony is "relevant to sentencing" within Article 37.07, § 3(a), it must consider whether the Rules of Evidence permit such testimony.[9] Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a); *Hernandez,* 819 S.W.2d at 816–17 ("[T]he discretion in determining evidence does not supersede the rules of evidence regarding the manner of proof.").

---

**9.** I agree with the court of appeals' holding that appellant's failure to object in timely manner waived his objection that the testimony was impermissible extraneous offense evidence.

In his dissent in *Dawson,* 503 U.S. at 179, 112 S.Ct. at 1105 (Thomas, J., dissenting), Justice Thomas observed that "the 'real issue' in admitting the gang membership evidence [is] whether its 'probative value is outweighed by the danger of unfair prejudice.'" *See also Langley v. State,* 723 S.W.2d 813, 817 (Tex.App.—Tyler 1987) (concluding that the testimony regarding defendant's gang membership "when tested by the appropriate standard against any inflammatory aspects thereof," was admissible). He disagreed with the majority's assertion that the membership testimony and the two-sentence stipulation [10] only proved Dawson's abstract beliefs. Rather, Thomas stated that the evidence "implied much more than that he shared the gang's abstract racist creed; it indicated that Dawson had engaged in prison gang activities, and that he had the character of a person who engages in these activities." *Dawson,* 503 U.S. at 172, 112 S.Ct. at 1101 (Thomas, J., dissenting).

The plurality neglects to recognize the prejudicial inference that jurors may draw from gang membership testimony, particularly where there is little evidence that appellant engaged in illegal activities motivated by or related to his gang membership. Jurors may be inclined to reason as follows: (1) Defendant was member of a gang; (2) The gang engaged in specific types of illegal conduct; (3) Therefore, defendant engaged in this illegal conduct. This is precisely the point made by Justice Thomas in *Dawson:*

> [I]n my judgment, a jury could reasonably conclude from Dawson's membership in a prison gang that he had engaged in some sort of forbidden activities while in prison.... [T]he stipulation was relevant to Dawson's character because it explained that the Aryan Brotherhood was a prison gang and that Dawson was a member. That evidence, I submit, supports an inference that while in prison, Dawson engaged in the kind of unlawful activity mentioned by the Court.

*Dawson,* 503 U.S. at 171, 112 S.Ct. at 1100–01 (Thomas, J., dissenting). This inference, absent sufficient evidence linking a defendant to the "forbidden activities" of the gang, is

unfairly prejudicial. In a sense, the gang membership testimony encourages the jury to infer that which the State is unable to prove.

The plurality's assertion that evidence of gang activities and gang membership is admissible so long as the jury is "not required to determine if the defendant committed the bad acts or misconduct" and "only asked to consider reputation or character of the accused," is not persuasive. *Beasley,* op. at 457. Regardless of whether it is instructed to make a factual finding, the jury may reasonably infer that a defendant participated in the illegal activities attributed to the gang.

In his concurring opinion in *Anderson v. State,* 901 S.W.2d 946 (Tex.Crim.App.1995), Judge Mansfield acknowledges the potential of unfair prejudice to defendants and properly suggests that courts give a limiting instruction admonishing the jury that the defendant's membership in the gang must not be construed as making him responsible for crimes or bad acts allegedly committed by the gang.

## IV. Application to Instant Case

In the instant case, the State called two witnesses to establish appellant's membership in the Crips: Officer Griego, who knew appellant during the time appellant lived in Barstow, California, and Eric Thompson, who was with the deceased at the time of the offense. During the punishment phase, Officer Griego testified that one of the ways Crips members make themselves known is by their distinctive garb or dress:

> The Crips are known to wear blue garb, such as blue pants or shirts, tennis shoes, shoelaces, caps with Raider's logos on them, jackets with Raider's logo, black or dark blue shirts, in combination with other garb.... Another way is the non-verbal communications, such as graffiti in their neighborhood where they reside.... [T]he Crips historically have been identified with the color blue, as opposed to the color red, which the opposing gang, the Bloods or Pirus, identify with. It's just a

**10.** *See supra* p. 467.

means of identifying themselves with their particular gang. In addition to the shirts, pants, they can also carry what is called a rag or a handkerchief signifying the same thing, a blue handkerchief.

After testifying that he knew appellant for a number of years, Griego responded to the State's questions:

Q: [State] Have you ever seen the Defendant, Roosevelt Beasley, wearing any of this gang clothing that you have outlined for the jury?

A: [Griego] Yes.

Q: [State] Have you ever seen Roosevelt Beasley hanging out with other known Crip gang members?

\* \* \* \* \* \*

A: [Griego] Yes, I have.

In addition, Eric Thompson testified that he heard appellant say, "I am part of the East-something Crips."

During the guilt/innocence stage, Thompson testified that the reason he and the deceased approached appellant was because of the way appellant and his two companions were dressed:

A: [Thompson] [B]ecause of the manner that they were dressed, Mack [the deceased] assumed he could make some type of connection with them because he was—he needed some product.

Q: [State] Let's back up a minute. The manner of their dress, how were they dressed?

A: [Thompson] They were displaying certain paraphernalia that was relevant to drug activity.

[Objection by Defense Counsel; overruled by trial court]

\* \* \* \* \* \*

Q: [State] Eric, just tell us what they were wearing.

A: [Thompson] One young man was wearing a black Raider's cap, a blue bandanna out of the back of his pocket. The other young man was wearing a L.A. Laker's jacket with a blue bandanna also hanging out of his pocket, button-up shirt....

Q: [State] Did you attach any significance to the blue bandanna and the L.A. Raider's cap and jackets?

[Objection by Defense Counsel; overruled by trial court]

\* \* \* \* \* \*

A: [Thompson] The blue bandanna has significance pertaining to gang activity.

[Objection by Defense Counsel; sustained by trial court; jury instructed to disregard.]

Thompson further testified that after he was shot, he told a police officer, "I was shot by some Crips."

On appeal, the court of appeals properly applied the first and second prong of the *Lemon* test. The court of appeals did not err in finding that the evidence was sufficient to establish appellant's membership in the Crips beyond a reasonable doubt,[11] and that the evidence was sufficient to show that the Crips engaged in illegal activities. *Beasley,* 864 S.W.2d at 810–11. However, the evidence that appellant participated in illegal conduct motivated by or related to his membership in the Crips, the third prong of the *Lemon* test, is insufficient. The State did not establish appellant's connection to the illegal activities of the Crips through evidence of his intent to further, participation in, or approval of those illegal activities.

The court of appeals held that it was not necessary to link appellant to "each and every type of crime that might be committed by the group." *Beasley,* 864 S.W.2d at 811.

11. During a hearing on the admissibility of gang membership evidence outside the presence of the jury, the trial court asserted:

[B]efore I will allow any expert to give any opinion about the activities of the so-called Crips gang, there's going to have to be proof showing that this accused *is* a member of that gang, for one.

On appeal, the Court of Appeals held that "a rational jury could determine *beyond a reasonable doubt,* from the evidence that we have outlined, that Beasley was a member of the Crips gang." *Beasley,* 864 S.W.2d at 811 (emphasis added).

Indeed, Griego testified that the Crips engaged in witness intimidation, and the record is devoid of *any* evidence linking appellant to this type of activity. The court of appeals was incorrect: If there is no link proven between appellant and an activity of the gang, the information regarding that activity of the gang is minimally relevant to determining the punishment of appellant. While it may be relevant information regarding the gang, it is of little relevance regarding the appellant. Even assuming, *arguendo,* that the evidence is "relevant," without this connection, it is unfairly prejudicial and therefore inadmissible. *See supra* part III. Without this linkage, I can conclude only that the State offered this evidence to encourage jurors to infer what it could not prove: Appellant engaged in illegal activities motivated by or related to his membership in the Crips.

At best, the court of appeals observed that the record indicated that appellant engaged in one of the activities, drug trafficking, attributed to the Crips: "[W]e note that at the time this evidence was introduced, Beasley stood convicted of murdering someone in what was, at best, a purported drug deal." *Beasley,* 864 S.W.2d at 811. However, the court of appeals did not find that appellant's conduct in the "purported drug deal" was motivated by or related to his participation in the Crips, thus failing to meet the third prong of the *Lemon* test. *See supra* part I. Further, even if this evidence was somehow "relevant," it is unfairly prejudicial to appellant. *See supra* part III. Because the plurality holds the evidence admissible without requiring a connection between appellant and the illegal activities of the gang, I dissent.

### V. Conclusion

Evidence of gang membership should be admitted only when the evidence constitutes proof beyond a reasonable doubt of the defendant's membership, the illegal purposes or activities of the group, and conduct by the defendant furthering the gang's illegal purposes. Trial courts should require a linkage between the defendant and each of the illegal activities of a gang introduced into evidence. Without this linkage, the evidence is of minimal relevance in assessing the defendant's punishment and unfairly prejudicial. Moreover, trial courts, following the example of the trial court in the instant case, should require the State to make a threshold showing of membership at a hearing outside the presence of the jury before allowing any testimony regarding gang membership to be introduced. The presumption should be against its admissibility absent a showing that it is relevant to sentencing and permitted by the Rules of Evidence.

BAIRD, J., joins.