Opinion issued November 8, 2007











     

 



In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00421-CR




ERSKINS RIVERS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1030798




MEMORANDUM OPINION
          Appellant, Erskins Rivers, appeals from a judgment convicting him for the 
murder of Anthony Howard. See Tex. Pen. Code § 19.02(b) (Vernon 2003). 
Appellant pleaded not guilty. The jury found appellant guilty and assessed
punishment at life in prison. In his first issue, appellant challenges the factual
sufficiency of the evidence to establish guilt. Appellant’s second through fourth
issues, which concern the punishment phase of trial, assert that the trial court erred
(1) by admitting photographs of appellant’s tattoos, (2) by admitting an officer’s
testimony as a gang membership expert, and (3) by failing to instruct the jury to limit
its use of gang membership evidence to determine appellant’s character or reputation. 
We conclude the evidence is factually sufficient and that the trial court did not err by
admitting evidence of appellant’s tattoos and expert testimony about tattoos, and that
appellant was not egregiously harmed by the trial court’s failure to give the jury
instruction. We affirm. Background
          On June 10, 2005, Anthony, along with his sisters, Stephanie and Viola
Howard, and a friend, Tiffany Taylor, stood on the street next to Tiffany’s car, after
leaving a birthday party. As they talked, a dark-colored Cadillac approached. When
the car’s headlights were suddenly extinguished, gunfire rang out from the car in their
direction. Anthony was killed by multiple gunshots, and Stephanie and Viola were
also struck by bullets, but Tiffany was not injured.
            After the shooting, Latrice Woodley, a guest at the party, heard one of the
occupants in the car say that Boobee is next. Boobee is Dexter Taylor, Anthony’s
best friend and cousin. Boobee had been expected to attend the party where the
shooting occurred. Boobee had previously been charged with shooting appellant in
the face, but the case was dismissed when appellant did not appear for that trial. 
After that case was dismissed and before the shooting, appellant’s brother Brian, told
Anthony, “Tell the n_____ that shot my brother that I’m looking for him.” 
          In the subsequent police investigation, officers recovered 14 fired cartridge
casings from at least two different firearms, a .45 caliber and a 9 millimeter. The
witnesses to the shooting led police to appellant and his brother, who were each
charged with the murder of Anthony. They stood trial before a single jury. At trial,
the State presented the testimony of four eyewitnesses.
          Stephanie identified appellant as the shooter. The night of the shooting,
Stephanie told a police officer that she remembered seeing only one person, a “dark-skinned dude,” in a dark colored car. In the days after the shooting, Stephanie
realized that the man she saw in the car was appellant. A week later, in a taped police
interview, she identified appellant from a photo line-up as the shooter. She also
identified appellant’s brother Brian as someone she remembered at the shooting. She
later explained that she did not see Brian that night, and only told the police officers
that she had seen Brian because Viola told her Viola had seen Brian. Stephanie
identified appellant in court as the shooter when she testified at trial. Stephanie
expressed disbelief that appellant was the shooter because she knew him.
          George Brandyburg also identified appellant. Brandyburg was at the same
party as Anthony and was standing at the end of the driveway at the time of the
shooting. Brandyburg initially told a police officer that three people were in the dark
green Cadillac but that he could not see who did the shooting and could not identify
anyone in the car. At trial, Brandyburg testified that the shots came from the front
passenger side door. When he testified at trial, Brandyburg identified appellant as
one of the occupants in the front seat.
          The other witnesses, Viola and Tiffany, did not identify appellant. Viola
identified appellant’s brother as a shooter. Viola initially told a police officer that she
saw three men shooting from the car but could only see one person clearly. In her
second police interview, Viola identified appellant’s brother as shooting from the
front passenger seat. At trial, she stated that could see the driver’s gun shooting past
the front passenger, and appellant’s brother was shooting through the back passenger
window. She could not identify the driver. She also saw a third man, who shot over
the car while hanging out of the rear passenger window, but she could not identify
him. Tiffany did not identify anyone. Tiffany initially told a police officer that three
people were in the car but that she could not identify any of them because she did not
get a good look at anyone’s face. At trial, she testified that only two of the three
passengers appeared to be shooting. 
          Appellant did not present any evidence. The jury found appellant and his
brother guilty of murder. In the sentencing phase, appellant stipulated to evidence of
four misdemeanor and three felony convictions. One of the offenses to which
appellant stipulated was engaging in organized criminal activity as a member of a
street gang, specifically Fed-X. The State also presented other evidence of
appellant’s gang membership, such as photographs of appellant’s tattoos, and
testimony from a police officer who testified as a gang expert.
Factual Sufficiency
          In his first issue, appellant challenges the factual sufficiency of the evidence
to establish appellant’s guilt. Appellant contends that the State’s witnesses lack
credibility because in the police interviews conducted within hours of the shooting,
none of them identified the shooter or the occupants of the car, and because their
testimony conflicts with each other. Appellant contends Stephanie’s testimony puts
appellant in the driver’s seat, but Brandyburg’s testimony puts appellant in the front
passenger seat. Appellant also notes that Viola places appellant’s brother in the front
passenger seat. 
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. A
jury is in the best position to evaluate the credibility of witnesses, and we are required
to afford “due deference” to the jury’s determinations. Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006). In conducting a factual-sufficiency review, we
must also discuss the evidence that, according to appellant, most undermines the
jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
          Although appellant accurately notes that some of the details are inconsistent
and that the witnesses did not immediately notify police officers about appellant’s
identity as the shooter, the record also shows that Stephanie positively identified
appellant from a photo lineup and in court as the person she saw shooting from the
car that night from the driver’s seat area. Viola’s testimony is consistent with
Stephanie’s testimony, in that Viola places appellant’s brother in the front passenger
seat as a shooter. Brandyburg also identified appellant as being in the front seat. The
physical evidence establishes that two guns were fired that night, which is consistent
with their testimony. The State also presented a motive of revenge for appellant and
his brother to shoot Anthony based on his friendship with Boobee. Because the jury
was in the best position to evaluate the credibility of the witnesses to consider and
reconcile the conflicts in the evidence, we give its determinations “due deference.” 
See Marshall, 210 S.W.3d at 625. 
          We conclude the evidence is not so weak that the verdict is clearly wrong and
manifestly unjust, and there is no basis in the record for a conclusion that the great
weight and preponderance of the evidence contradicts the jury’s verdict. See Watson,
204 S.W.3d at 417. We hold that the evidence is factually sufficient. We overrule
appellant’s first issue.
Admission of Photographs of Gang-Related Tattoos
          In his second issue, appellant contends that the trial court erred in admitting
into evidence photographs of appellant’s gang-related tattoos during the punishment
phase of trial because the danger of unfair prejudice substantially outweighed the
probative value of the photographs. See Tex. R. Evid. 403. 
           A trial court’s ruling on a Rule 403 objection is reviewed for abuse of
discretion. Reese v. State, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000). Rule 403
provides that relevant evidence “may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the issues,
or misleading the jury.” Tex. R. Evid. 403. The Court of Criminal Appeals has
identified a non-exclusive list of factors to apply in making a Rule 403 analysis.
Reese, 33 S.W.3d at 240–41. These factors include, but are not limited to (1) how
probative the evidence is; (2) the potential of the evidence to impress the jury in an
irrational but indelible way; (3) the time the proponent needs to develop the evidence;
and (4) the proponent’s need for the evidence. Id. A trial court’s ruling on a Rule
403 objection is reviewed for an abuse of discretion. Id. at 241.
          Under the first factor of Reese, we must determine how probative the evidence
is. The photographs were highly probative of appellant’s affiliation with the “Fed-X” and “5 Deuce Hoova Crips” gangs. Officer Squires testified that, while it was not
the sole factor in determining gang membership, a tattoo is highly indicative of gang
affiliation. The second factor requires that we examine the potential of the evidence
to impress the jury in an irrational but indelible way. The State used the photographs
to show appellant’s gang membership in a particular gang. Evidence of gang
membership, including the use of photographs of tattoos, is usually admissible for
punishment purposes. See Anderson v. State, 901 S.W.2d 946, 950 (Tex. Crim. App.
1995). The third factor concerns the time that the proponent needs to develop the
evidence. Only 16 pages of testimony, which is a small percentage of the reporter’s
record from the punishment phase, concerns the photographs. The fourth factor
requires that we look at the proponent’s need for the evidence. The State used the
evidence to show appellant’s affiliation with Fed-X. Appellant contends that the
photographs were not necessary because appellant had already stipulated to a prior
conviction that stated he was a member of Fed-X. However, the photographs
connected appellant not only to the Fed-X gang, but also to the “5 Deuce Hoova
Crips” gang. Further, the trial court could have determined that a permanent tattoo
of a gang is more suggestive of a lifelong commitment to the gang than a one-time
conviction for membership in the gang. We conclude that the four factors weigh in
favor of admission of the photographs. We hold that the trial court did not abuse its
discretion by finding that the dangers of unfair prejudice did not substantially
outweigh the probative value of the evidence regarding photographs of appellant’s
tattoos. We overrule appellant’s second issue.
Expert Testimony
          In his third issue, appellant contends that the court erred by admitting Officer
Squires’s “testimony as a gang membership expert.” Appellant contends that Officer
Squires’s “testimony was tainted and his opinion that [a]ppellant was a gang member
was not based upon a subject matter appropriate for expert testimony.” Appellant
asserts the expert testimony was based upon an interrogation of appellant while
appellant was in custody without benefit of the warnings against self-incrimination
as required by Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). 
          A trial court’s determination of a witness’s qualifications as an expert and its
decision to allow expert testimony are reviewed for an abuse of discretion.
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Rule 702 of the
Texas Rules of Evidence provides that “[i]f scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to determine a
fact in issue, a witness qualified as an expert by knowledge, skill, experience,
training, or education may testify thereto in the form of an opinion or otherwise.” 
Tex. R. Evid. 702. The facts in a particular case upon which an expert bases an
opinion or inference may be those perceived by, reviewed by, or made known to the
expert at or before the hearing, and such facts need not be admissible in evidence if
they are of a type reasonably relied upon by experts in the particular field in forming
opinions on the subject. Tex. R. Evid. 703; Joiner v. State, 825 S.W.2d 701, 707–08
(Tex. Crim. App. 1992); Ramirez v. State, 815 S.W.2d 636, 651 (Tex. Crim. App.
1991).
          Outside the presence of the jury, Officer Squires explained that he spoke to
appellant while appellant was in custody without giving appellant Miranda warnings
and appellant admitted his gang membership. Officer Squires said his opinion about
appellant’s gang membership is premised on appellant’s answers in that interview and
on the tattoos on appellant’s body. One of the tattoos the officer points to is the name
Fed-X. Appellant also has a tattoo that says 5-2 with a double barrel shot gun with
the word “Nigga” underneath. The officer stated that Fed-X is a local street gang in
the Houston area. The officer also said that the tattoo is “a typical tattoo that is used
by people that are a member [sic] of the Fed ‘X’ gang, to show membership in that
gang.” The officer further related that the other tattoo refers to “a very large Crip set
that originated in Los Angeles.” The officer explained that even if appellant had not
told him about the tattoo with the 5-2, he would have “suspected that it had something
to do with the 5 Deuce Hoova Crips.” The officer acknowledged, however, that
“typically we are not going to use just a tattoo to identify somebody” and that a good
part of his opinion that appellant was a member of these gangs was based on what
appellant told him. 
          Outside the presence of the jury, appellant objected to the admission of the
expert testimony “since it’s based primarily on an interview with my client after he
was in custody.” Appellant also objected by asserting that the witness has not been
established as an expert. The trial court sustained appellant’s objection by stating,
“But I do want to stay away from the area of the self-admission to this witness, as I
did with the other witness, until and unless somebody gives me something with some
authority as to whether or not that would be admissible.” The trial court also ruled
that it would allow the expert evidence “conditioned upon the witness being able to
testify as to some specific expertise with regard to that gang and in terms of
identification with regard to that gang.” 
          After obtaining favorable rulings in the hearing outside the presence of the
jury, appellant only twice objected to the officer’s testimony that occurred before the
jury. Appellant objected that the officer was not “qualified” to give an opinion (1) on
the tattoo that has a 5-2 with the shotgun and word “Nigga,” and (2) whether
appellant is a member of the criminal street gang Fed-X. 
A. Interrogation of Appellant 
          To preserve error, an appellant must assert an objection and obtain an adverse
ruling. Tex. R. App. P. 33.1; Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App.
2002). Appellant objected to the use of appellant’s confession outside the presence
of the jury after taking the witness on voir dire. The trial court sustained appellant’s
objection and admonished the State not to introduce evidence premised on appellant’s
self-admission. Thus, appellant did not obtain an adverse ruling outside the presence
of the jury; the ruling was favorable. Appellant did not object or request an
instruction to disregard when the witness stated during direct examination that his
opinion was based, in part, on the self-admission. Rather, appellant only objected on
the grounds that the witness was not qualified as an expert. Error was not preserved
because appellant never obtained an adverse ruling. Fuller v. State, 827 S.W.2d 919,
926 (Tex. Crim. App. 1992) (stating that to preserve error, “the most important
procedure is to press the specific objection to the point of obtaining an adverse ruling,
be that to the objection, request for an instruction, or the motion for mistrial”). We
hold appellant waived error concerning evidence premised on the interrogation of
appellant. Tex. R. App. P. 33.1; Wilson, 71 S.W.3d at 349. 
B. Qualification of Witness 
          Officer Squires testified that he has been a certified peace officer for 11 years. 
He has worked with the Harris County Sheriff’s Office Disruptive Group Unit at the
Harris County Jail for the last seven years. The officer reported that he has over 3000 
hours of training directly involved with gang identification of prison and street gang
members. The officer related that he has been a member of the Texas Gang
Investigators Association for 12 years and been with the Texas Violent Gang Task
Force for 13 years. We conclude that the trial court did not abuse its discretion by
determining that Officer Squires was qualified to testify as an expert on gang
membership. See Wyatt v. State, 23 S.W.3d 18, 27–28 (Tex. Crim. App. 2000)
(finding that police officer was qualified to testify as expert on sexual offenders and
recidivism based on experience and specialized knowledge). 
          We hold that the trial court did not abuse its discretion by allowing Officer
Squires’s testimony. We overrule appellant’s third issue.Jury Charge in Sentencing Phase
            In his fourth issue, appellant contends that the trial court failed to instruct the
jury to only consider evidence of appellant’s gang membership to determine his
character or reputation. 
          When reviewing charge errors, an appellate court must undertake a two-step
review: first, the court must determine whether error actually exists in the charge;
second, if the court finds error, it must determine whether sufficient harm resulted
from the error to require reversal. Olivas v. State, 202 S.W.3d 137, 143–44 (Tex.
Crim. App. 2006); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).
When, as here, there has not been a timely objection to the charge made at trial, if
there is error in the charge, an appellate court will reverse only if the defendant can
show “egregious harm.” Abdnor v. State, 871 S.W.2d 726, 732 (Tex. Crim. App.
1994); Almanza, 686 S.W.2d at 171.
          Appellant cites to Beasley v. State in stating that the jury should be instructed
that evidence of gang membership can only be used to determine the reputation or
character of appellant. See Beasley v. State, 902 S.W.2d 452, 457 (Tex. Crim. App.
1995). The issue in Beasley was whether the trial court erred by admitting evidence
of gang membership in the punishment phase of trial; the issue was not whether jury
charge error occurred. Id. at 454. The Court noted that under former Rule of
Criminal Evidence 404(c), during the punishment phase of trial “evidence may be
offered by an accused or by the prosecution as to . . . his character.” Id. at 456.


 The
Court held 
[I]t is not necessary to link the accused to the bad acts of misconduct
generally engaged in by gang members, so long as the jury is (1)
provided with evidence of the defendant's gang membership, (2)
provided with evidence of character and reputation of the gang, (3) not
required to determine if the defendant committed the bad acts or
misconduct and 4) only asked to consider reputation or character of the
accused.
 
Id. at 457.

          Appellant contends that the fourth prong, which provides that the jury is “only
asked to consider reputation or character of the accused” requires that the charge
include that language. Like Beasley, the record here shows that the jury was provided
with evidence of the appellant’s gang membership, the jury was told that gangs
commit crimes, and the evidence of gang membership was pertinent to the reputation
or character of appellant. See id. at 456. However, unlike the third prong in Beasley,
here the jury was given an instruction to determine whether the defendant committed
bad acts or misconduct. See id. at 453–54. 
          Assuming it was error to fail to instruct the jury to limit its consideration of
gang evidence to assessing the character or reputation of appellant, we conclude
appellant was not egregiously harmed by the omission. Article 37.07, section 3(a)(1)
states that in the punishment phase, 
evidence may be offered by the [S]tate and the defendant as to any matter
the court deems relevant to sentencing, including but not limited to the
prior criminal record of the defendant, his general reputation, his
character, an opinion regarding his character, the circumstances of the
offense for which he is being tried, and . . . any other evidence of an
extraneous crime or bad act . . . .
 
Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon 2006). In
accordance with article 37.07, the trial court instructed the jury to only consider
evidence of an extraneous crime or bad act if it believed beyond a reasonable
doubt that appellant committed the extraneous crime or bad act. See id.; Bluitt
v. State, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004). 
          The jury was told that appellant was a member of a gang and that gangs,
in general, commit crimes. The trial court limited consideration of evidence in
determining appellant’s punishment by requiring the jury to only consider bad
acts that were proven beyond a reasonable doubt. We cannot conclude that the
failure to instruct the jury to limit consideration of gang evidence to
determination of the defendant’s character or reputation egregiously harmed
appellant. We hold that appellant was not egregiously harmed by the omission
of the jury charge. We overrule appellant’s fourth issue.
 Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Do not publish. Tex. R. App. P. 47.2(b).