Opinion issued April 16, 2009








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-01122-CR

____________


BENJAMIN MEZA, JR., Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 240th District Court

Fort Bend County, Texas

Trial Court Cause No. 43,449






MEMORANDUM OPINION

 A jury found appellant, Benjamin Meza, Jr., guilty of the offense of possession
of a controlled substance, namely cocaine, with intent to deliver (1) and, after finding
that he had committed the offense in a drug-free zone, (2) assessed his punishment at
confinement for eighty years. In four points of error, appellant contends that the
evidence is legally and factually insufficient to support his conviction, the evidence
is legally and factually insufficient to support the finding that he committed the
offense in a drug-free zone, and the trial court erred in denying his motion to suppress
his statement and admitting evidence that he is a gang member.

 We affirm.

Factual Background

 Fort Bend County Sheriff's Department Lieutenant R. Glendening testified that
on November 29, 2005, he supervised a team of police officers that executed a search
warrant at appellant's residence. At the residence, police officers found 244 grams
of cocaine, "some digital scales," and "some little plastic bags." Glendening noted
that the officers did not find items such as mirrors, straws, razor blades, needles, or
tubes which might indicate that someone had been "snorting," "shooting," or
"smoking" cocaine at the residence.

 City of Rosenberg Police Department Sergeant A. Slater testified that he was
also part of the team that executed the search warrant at appellant's residence. Once
inside the residence, Slater explained to appellant that he "had a search warrant . . .
and that [the police officers] would be searching for cocaine." Appellant responded,
"Listen, the cocaine is mine, nobody else['s]. It doesn't belong to anyone else in the
house." Appellant then told Slater the location of the cocaine, leading him to the
kitchen and pointing "above some cabinets" at a Kleenex box which contained nine
bags of cocaine. After his arrest, appellant, at the Fort Bend County Sheriff's Office,
provided Slater with a written statement in which he admitted that he had showed
police officers where he had stored "between 8 and 9 ounces" of cocaine "on top of
the bar cabinet" in the kitchen.

 Fort Bend County Sheriff's Office Detective A. Gonzales testified that he
photographed the Kleenex box and moved it to the top of the kitchen counter. In the
Kleenex box, Gonzales found "nine packages of . . . powder cocaine." Gonzales also
discovered "on top of the same cabinet" another package in a Ziploc bag which
contained powder cocaine. In addition to the cocaine, Gonzales found approximately
120 "small baggies" and a scale. Gonzales estimated the value of the cocaine found
at Meza's residence at "close to $12,000." 


Sufficiency of the Evidence

 In his first and second points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction because the State failed to
prove that he exercised care, custody, or control over the contraband. Appellant
asserts that the only evidence linking him to the contraband was his presence at the
residence. He also contends that the evidence is legally and factually insufficient to
show that he lived within a drug-free zone. 

 We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979)). 
In doing so, we give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. However, our duty requires us to "ensure that the evidence presented
actually supports a conclusion that the defendant committed" the criminal offense of
which he is accused. Id. 

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford due deference to the jury's determinations. Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006). Although we should always be "mindful" that a jury is
in the best position to decide the facts and that we should not order a new trial simply
because we disagree with the verdict, it is "the very nature of a factual-sufficiency
review that . . . authorizes an appellate court, albeit to a very limited degree, to act in
the capacity of a so-called 'thirteenth juror.'" Watson, 204 S.W.3d at 414, 416-17. 
Thus, when an appellate court is "able to say, with some objective basis in the record,
that the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury's verdict[,] . . . it is justified in exercising its appellate fact
jurisdiction to order a new trial." Id. at 417.

 A person commits the offense of possession of a controlled substance in an
amount more than 200 grams but less than 400 grams if he knowingly and
intentionally possesses the controlled substance in the prescribed amount, by
aggregate weight, including adulterants or dilutants. See Tex. Health & Safety
Code Ann. §§ 481.002(5), 481.102(3)(D) (Vernon Supp. 2008), § 481.112(a), (e)
(Vernon 2003). To prove possession with intent to deliver, the State must prove that
the defendant (1) exercised care, custody, control, or management over the controlled
substance; (2) intended to deliver the controlled substance to another; and (3) knew
that the substance in his possession was a controlled substance. Id. § 481.002(38)
(Vernon Supp. 2008), § 481.112(a); Parker v. State, 192 S.W.3d 801, 805 (Tex.
App.--Houston [1st Dist.] 2006, pet. ref'd). Possession is a "voluntary act if the
possessor knowingly obtains or receives the thing possessed or is aware of his control
of the thing for a sufficient time to permit him to terminate his control." Tex. Penal
Code Ann. § 6.01(b) (Vernon 2003). If the offense is committed within 1,000 feet
of a school, the minimum term of confinement is increased by five years, and the
maximum fine is doubled. Tex. Health & Safety Code Ann. § 481.134(c) (Vernon
Supp. 2008).

 The State may offer direct or circumstantial evidence to prove a defendant's
possession of narcotics. See Brown v. State, 911 S.W.2d 744, 747-48 (Tex. Crim.
App. 1995). When the State relies on circumstantial evidence to prove that a
defendant knowingly possessed narcotics, the State must link the defendant to the
narcotics in such a manner that one could reasonably conclude that the defendant
knew of the existence of the narcotics and exercised control over it. Id.; see also
Evans v. State, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006) (recognizing that
necessary connection between defendant and narcotics may be referred to as
"affirmative link" or simply as "link"). Whether direct or circumstantial evidence is
used, the State must establish that the defendant's connection with the narcotics was
more than just fortuitous. Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex. Crim.
App. 2005). In determining whether the defendant actually knew that he possessed
narcotics, the jury is allowed to infer the defendant's knowledge from his acts,
conduct, remarks, and from the surrounding circumstances. Ortiz v. State, 930
S.W.2d 849, 852 (Tex. App.--Tyler 1996, no pet.); Menchaca v. State, 901 S.W.2d
640, 652 (Tex. App.--El Paso 1995, pet. ref'd); see also Gutierrez v. State, 628
S.W.2d 57, 60 (Tex. Crim. App. [Panel Op.] 1980) (concluding that jury could
reasonably infer from independent facts and circumstances that defendant knew of
narcotic's existence), overruled on other grounds, Chambers v. State, 711 S.W.2d
240, 247 (Tex. Crim. App. 1986).

 Appellant argues that the State failed to prove that he had care, custody, or
control over the cocaine because there is no evidence that he owned the residence in
which the cocaine was found and there is evidence that other people had access to the
area where the cocaine was found.

 Viewing the evidence in the light most favorable to the verdict, appellant
admitted to the police officers who were executing the search warrant that he lived
at the residence and told them that "the cocaine is mine, nobody else['s]. It doesn't
belong to anyone else in the house." Appellant showed Sergeant Slater the location
of the cocaine in the Kleenex box in the kitchen. After his arrest, appellant also
provided Slater with a written statement in which he admitted that he possessed the
cocaine that was found in the kitchen. From this evidence, a rational trier of fact
could have found that appellant's connection to the cocaine was not merely
fortuitous. See Poindexter, 153 S.W.3d at 405-06. Accordingly, we hold that the
evidence is legally sufficient to support the jury's implied finding that appellant
exercised care, custody, or control over the cocaine.

 Appellant next argues that the evidence is legally insufficient to support the
jury's finding that he committed the offense in a drug-free zone because the only
evidence offered to support this finding was Sergeant Slater's "speculative"
testimony, based on "a drug-free zone map," that appellant's residence is located
within 1,000 feet of an elementary school. Appellant asserts that this evidence is
"insufficient to prove that [his] residence [is] within the required distance to be
labeled a drug free zone."

 Viewing the evidence in the light most favorable to the verdict, Sergeant Slater
testified, based on "a drug-free zone map" provided to him by the City of Rosenberg,
that appellant's residence is "within a thousand feet of Bowie Elementary School." (3) 
From this evidence a rational trier of fact could have found that appellant's residence
was located within 1,000 feet of a school. Accordingly, we hold that the evidence is
legally sufficient to support the jury's finding that appellant committed the offense
within 1,000 feet of a school and, therefore, in a drug-free zone. 

 Appellant argues that the evidence is factually insufficient to support his
conviction because "the evidence overwhelmingly demonstrates that there [is] a
reasonable doubt as to whether he" knowingly possessed, with intent to deliver, a
controlled substance, namely, cocaine, in an amount of more than 200 grams but less
than 400 grams.

 Viewing the evidence introduced during the guilt stage of trial in a neutral
light, appellant stated that he knew the location of the cocaine and that all of the
cocaine found in the residence "belonged to [him] and no one else." In his written
statement, appellant also confirmed that the "scale, a spoon, and some small baggies
next to the cocaine" belonged to him. Lieutenant Glendening testified that the
presence of these items--and the absence of narcotics paraphernalia that would be
used to ingest the cocaine--indicated that appellant "intended to distribute the
cocaine." Glendening also testified that the large amount of cocaine in the residence
further strengthened this conclusion. Based on this evidence, the jury found that
appellant (1) exercised care, custody, control, or management over the cocaine; (2)
intended to deliver the cocaine; and (3) knew that the substance in his possession was
a controlled substance, namely cocaine. See Tex. Health & Safety Code Ann.
§§ 481.002(38), 481.112(a); Parker v. State, 192 S.W.3d 801, 805 (Tex.
App.--Houston [1st Dist.] 2006, pet. ref'd). In his briefing, appellant does not point
to, nor do we find in the record, evidence that would lead us to conclude that the
verdict is "clearly wrong and manifestly unjust" or that the proof of guilt is against
the great weight and preponderance of the evidence. See Watson, 204 S.W.3d at
414-15. 

 Accordingly, we hold that the evidence is factually sufficient to support the
jury's implied finding that appellant exercised care, custody, control, or management
over the cocaine. 

 Appellant next argues that the evidence is factually insufficient to support the
jury's finding that he committed the offense in a drug-free zone because the only
evidence offered to support this finding was Sergeant Slater's "speculative"
testimony, based on "a drug-free zone map," that appellant's residence is located
within 1,000 feet of a school.

 As noted above, Sergeant Slater testified, based on a "drug-free zone map"
provided to him by the City of Rosenberg, that appellant's residence is "within a
thousand feet of Bowie Elementary School." Appellant offered no rebuttal testimony
or contrary evidence. Accordingly, we hold that the evidence is factually sufficient
to show that appellant committed the offense in a drug-free zone.

 We overrule appellant's first and second points of error.

Motion to Suppress

 In his third point of error, appellant argues that the trial court erred in denying
his motion to suppress his written statement because he was intoxicated at the time
he gave the statement. Appellant also asserts that the trial court erred in not making
findings of fact and conclusions of law regarding his waiver of his legal rights.

 When the voluntariness of a statement made by a defendant is questioned, the
trial court is required to make an independent finding, outside the jury's presence, as
to whether the statement was made under voluntary conditions. Tex. Code Crim.
Proc. Ann. art. 38.22, § 6 (Vernon 2005). If the trial court determines that the
defendant made the statement voluntarily, it must then enter findings of fact and
conclusions of law. Id.; Urias v. State, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004). 
The findings "'need not be made with minute specificity as to every alleged and
hypothetical possibility for physical or mental coercion, but need only be sufficient
to provide the appellate court and the parties with a basis upon which to review the
trial court's application of the law to the facts.'" Vasquez v. State, 179 S.W.3d 646,
654 (Tex. App.--Austin 2005) (quoting Nichols v. State, 810 S.W.2d 829, 831 (Tex.
App.--Dallas 1991, pet. ref'd)), aff'd, 225 S.W.3d 541 (Tex. Crim. App. 2007). 
When the trial does not make findings, "[t]he proper procedure is that the trial judge
be directed to make the required findings of fact and conclusions of law." Urias, 155
S.W.3d at 142.

 On December 3, 2008, after discovering that the trial court had not issued the
requisite written findings of fact and conclusions of law, this Court ordered the appeal
abated and directed the trial court "to complete written findings of fact and
conclusions of law." The trial court has done so. Therefore, appellant's complaint
that the trial court did not make findings of fact and conclusions of law is moot. See
Rocha v. State, 16 S.W.3d 1, 10 (Tex. Crim. App. 2000).

 A defendant's statement may be used in evidence against him if the defendant
made it freely and voluntarily and without compulsion or persuasion. Tex. Code
Crim. Proc. Ann. art. 38.21 (Vernon 2005). At a suppression hearing on a
defendant's challenge to the voluntariness of his statement, the trial court is the sole
and exclusive trier of fact and judge of witnesses' credibility. Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, the trial court may choose
to believe or to disbelieve all or any part of the witnesses' testimony. State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing a trial court's ruling, we
generally consider only evidence adduced at the suppression hearing because the
ruling was based on it rather than evidence introduced later. Rachal v. State, 917
S.W.2d 799, 809 (Tex. Crim. App. 1996). When considering whether a statement
was voluntarily made, we consider the totality of the circumstances in which the
statement was obtained. Wyatt v. State, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). 
 At the suppression hearing, Officer Slater testified that at the Fort Bend County
Sheriff's Office he "read [appellant] his [legal] rights prior to obtaining the
statement" and that appellant "knowingly and intelligently waive[d] those rights." 
Slater then interviewed appellant and typed appellant's statement using the
information that appellant provided. After the statement had been typed, Slater
"explained to [appellant] that he need[ed] to read the entire statement." After reading
his statement, appellant initialed "next to each one of the" warnings about his legal
rights and signed "the bottom of each page." Slater stated that appellant did not say
that he was tired and did not "seem asleep or out of it." 

 Fort Bend County Deputy Sheriff B. Leach testified that he was in the
interview room with appellant "for the complete time that [appellant] was there." 
Leach observed that appellant did not "look like he may have been under the
influence of any drug or narcotic," nor did "he look sleep deprived." 

 Appellant testified that he did not read the statement that Slater typed because
he "wanted to go to sleep." He agreed that he did initial and sign the statement.

 The trial court made the following findings of fact:

 . . . .


 4. Sergeant Slater of the Rosenberg Police Department read
[appellant] . . . the warnings provided in Code of Criminal
Procedure Art. 38.22, prior to [appellant] giving his oral and
written statements to police.


 5. [Appellant] knowingly and voluntarily waived his [legal] rights,
both verbally and in writing, and agreed to give Sergeant Slater
a statement.


 6. After giving his oral statement, Sergeant Slater then typed
[appellant's] statement on a computer and gave [appellant] a copy
to read and make any corrections before signing it.


 7. [Appellant] read out loud the top portion of his statement to
indicate that he could read, write, and speak English.


 8. [Appellant] acknowledged his statement was freely and
voluntarily given, and that it was correct as typed, by signing his
written statement.


 9. There was no credible evidence presented at the hearing on
[appellant's] motion to suppress his confession that any member
of law enforcement coerced [appellant] into giving either his oral
or written statement.

Finding that the testimony of Slater and Leach was credible and that the testimony of
appellant was not credible, the trial court ultimately decided that appellant had 
"acknowledged [that] his statement was freely and voluntarily given, and that it was
correct as typed, by signing his written statement." 

 The trial court's findings are supported by the evidence adduced at the
suppression hearing. Accordingly, we hold that the trial court did not err in denying
appellant's motion to suppress his statement.

 We overrule appellant's third point of error.

Testimony Regarding Gang Affiliation

 In his final point of error, appellant argues that the trial court erred in admitting
evidence that he belonged to the "Texas Syndicate" gang, the gang had a "bad
reputation," and the gang was involved in "distribution of narcotics." Appellant
asserts that this evidence "is inadmissible evidence of unadjudicated extraneous
offenses."

 In support of his assertion that evidence of his gang membership was
inadmissible at the punishment stage of trial, appellant relies solely on Beasley v.
State, 902 S.W.2d 452, 457 (Tex. Crim. App. 1995). However, this Court has
recognized that evidence of a defendant's gang membership is generally admissible
"under the type of 'bad acts' relevant to sentencing . . . even without satisfying the
requirements set forth in Beasley." Sierra v. State, 266 S.W.3d 72, 79 (Tex.
App.--Houston [1st Dist.] 2008, no pet.) (reasoning that "Article 37.07 explicitly
allows the introduction of such evidence"); see Tex. Code Crim. Proc. Ann. art.
37.07, § 3(a)(1) (Vernon 2008). Furthermore, appellant mischaracterizes the Court's
holding in Beasley. (4) Under Beasley, the State is not required to prove that a
defendant actually intended to further the illegal aims of a gang in order to introduce
evidence of the defendant's gang membership. See Beasley, 902 S.W.2d at 457. The
State may introduce evidence of a gang's "character and reputation" and "the bad acts
or misconduct generally engaged in by gang members" without linking a defendant
directly to the bad acts or misconduct. See id. 

 Accordingly, we hold that the trial court did not err in admitting evidence that
appellant was a member of the "Texas Syndicate" gang and that the "Texas
Syndicate" gang is involved in the distribution of narcotics. 

 We overrule appellant's fourth point of error.



Conclusion

 We affirm the judgment of the trial court.


 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.


Do not publish. Tex. R. App. P. 47.2(b). 

1. See Tex. Health & Safety Code Ann. §§ 481.002(5), 481.102(3)(D) (Vernon Supp.
2008), § 481.112(a), (e) (Vernon 2003).
2. See id. § 481.134(c) (Vernon Supp. 2008).
3. Although appellant objected to the admission of the map into evidence at trial, he does
not complain about its admission into evidence on appeal.
4. In citing Beasley, appellant has not provided this Court with a pinpoint citation,
specifying upon which part of the opinion he relies. See Tex. R. App. P. 38.1(h). 
However, in reviewing appellant's briefing and the Court's opinion in Beasley, it
appears that appellant is relying on the dissent in Beasley, in which Judge Maloney
opined that evidence of gang membership should only be allowed when it is shown
that a defendant "intended to further the illegal activities of the gang." 902 S.W.2d
at 463 (Maloney, J., dissenting).