**Affirmed as modified; Opinion Filed August 20, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00311-CR

### COREY FREEMAN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F16-75412-H**

# MEMORANDUM OPINION
Before Justices Lang-Miers, Evans, and Schenck
Opinion by Justice Evans

Appellant Corey Freeman appeals his conviction for murder. Appellant contends that his trial counsel rendered ineffective assistance and that the evidence was insufficient to disprove that he acted in self-defense. We modify the trial court's judgment and affirm as modified.

## BACKGROUND

On March 4, 2016, Davoyla Lewis was shot and killed outside a convenience store in Dallas. Following appellant's arrest, he spoke with Detective Andrea Isom from the Homicide Unit of the Dallas Police about the events in question. According to the interview, appellant ran into Lewis outside the convenience store and Lewis began asking appellant about his brother. Appellant told Lewis that his brother was in Lew Sterrett (the Dallas County jail) and he could "put some money on his books" if he really wanted to speak with him. Appellant told Detective

Isom that Lewis got angry and aggressive after this statement and began yelling, put his fists up, and said he had a gun. Appellant stated that when Lewis came at him, he pulled out his gun, shot it twice without looking, and took off running. Appellant also told Detective Isom that he did not mean to shoot Lewis; he was only seeking to protect himself. Appellant told Detective Isom that he got the gun because he had received threats against his life on Facebook, as well as threats someone would "shoot up" his family's home. Appellant stated that he had received the threats because he spoke to the police about an unrelated incident. Appellant stated that he barely knew Lewis but he was scared because he did not know if Lewis was somehow connected to the death threats.

The grand jury indicted appellant for murder and appellant plead not guilty. Misty Risper, the cashier at the convenience store where Lewis was shot, testified at appellant's trial that appellant was in and out of the store on March 4, 2016. Risper was familiar with the store's regular customers and recognized both Lewis and appellant. Risper further testified that around lunchtime she observed a pistol hanging out of appellant's pocket and when she questioned appellant as to why he had a pistol, he responded that "just in case I have to do me somebody." She testified that sometime later Lewis entered the store, made a purchase, and exited. After Lewis left, Risper testified that she heard loud talking outside and someone say "we can fight" or "let's box." Risper then heard a gunshot and, as she was pushing open the door, another gunshot. Risper testified that she saw appellant fire the second shot, put his gun in his pocket, look down, and run from the scene. Risper also testified that she did not see any gun other than the one that was in appellant's hand.

Officer Richard Ruckstaetter, one of the police officers who responded to the crime scene, testified that there was no evidence that Lewis ever had any sort of weapon. Jashawn Alex, cousin of the victim, testified that he was outside of the convenience store when Lewis was shot. Alex

testified that Lewis was arguing with appellant outside the store and appellant pulled the gun and shot Lewis twice. Alex further testified that Lewis did not do anything that he could see that would have caused Lewis to be shot and that Lewis did not have a gun.

Latasha McWilliams, appellant's mother, testified that she received threats concerning her son both before and after Lewis's murder. McWilliams testified that appellant was involved in a shooting about six days before the shooting on March 4, 2016. She further testified that people were upset at appellant for the prior shooting which resulted in appellant being paranoid.

The jury rejected appellant's theory of self-defense and found appellant guilty of murder. The case then proceeded to the punishment phase of the trial where appellant entered a plea of not true to an enhancement paragraph which alleged a juvenile adjudication for the offense of burglary of a habitation. The State then offered the testimony of several witnesses:

(1)     Gary O'Pry: O'Pry is a senior sergeant investigator with the Dallas County District Attorney's office. He confirmed that the fingerprints he collected from appellant matched the prints on prior convictions bearing appellant's name. The prior convictions involved juvenile adjudications for the offenses of assault causing bodily injury, criminal trespass, and burglary of a habitation. He also testified about appellant's two adult convictions for theft of a person.

(2)     Rich Perkins: Perkins is an investigator with the Criminal District Attorney's office who testified that he photographed appellant's tattoos.

(3)     B.K. Nelson: Nelson is a police detective for the Dallas police department. Nelson testified about his work with the gang unit and that his duties include documenting and identifying gang members. Detective Nelson testified that appellant admitted to being part of the street gang named BFL-304. He further testified that BFL-304 had well over 150 members, wear the color red, and have committed "every crime

known to man" including murder, burglary, assault, criminal trespass and aggravated robbery. Detective Nelson testified that appellant had a "304" for BFL or "Best for Less" as well as a moneybag with dollar signs tattoo which indicates a particular subset of BFL.

(4)     Christopher Ambers: Ambers is a probation officer for Dallas County at Dallas Youth Village. Ambers testified that Dallas Youth Village is a level 3 sanctioned juvenile facility for kids who violated probation while at home. Ambers testified that appellant had been unsuccessfully discharged from the Dallas Youth Village because he received seventeen incident reports in less than a month at the facility.

(5)     Marvin Mitchell: Mitchell is a former probation officer with the Dallas County juvenile probation department. Mitchell testified that appellant was unsuccessfully discharged from Lyle B. Medlock, a level 5 secure facility, because he had eighty one incident reports in four months.

(6)     Jessica Soto: Soto is a crime scene analyst for the Dallas police department. Soto testified that she responded to a crime scene for a residential burglary at 3015 East Ledbetter and located fingerprints on the front door of the home and from a shoe box inside the home when she was processing the scene.

(7)     Peter Salicco: Salicco is a forensic fingerprint expert and certified latent print examiner with the Dallas police department. Salicco testified that he compared the prints recovered by Soto at the crime scene and the prints he took from appellant and concluded that they were a match.

(8)     Patricia Wright: Wright lives in an apartment on 3015 East Ledbetter and was the victim of the residential burglary. She testified that someone burglarized her home and took everything except the couch and her bed from her home including rugs,

televisions, towels, curtains, food from cabinets and a pair of shoes out of a shoe box.

(9)     Julia Waylan: Waylan is a crime scene analyst from with the Dallas police department who responded to a shots fired/aggravated robbery call on February 26, 2016 at a convenience store in South Dallas. Waylan testified that she photographed the scene and recovered fingerprints from the inside window of the driver's front door of a car at the crime scene.

(10)    Peter Salicco: Salicco then testified that he performed the fingerprint analysis for the fingerprints recovered by Waylan from the aggravated robbery crime scene and matched them to appellant.

(11)    Major T. Berry: Berry is a detective with the Dallas police department who works in the robberies division. Berry testified that he investigated an aggravated robbery on February 26, 2016, at a convenience store in South Dallas. After watching a surveillance video, Berry testified that the victim, Christopher Cobb, walked out of the convenience store when the suspect spoke with him and followed him to his car. The suspect then shot Cobb a couple of times, reached into the car to grab something, and ran off. Berry testified that they could not identify the suspect from the video but that the suspect would have had an opportunity to touch his left hand to the inside driver's door window.

(12)    Andrea Isom: Isom testified again and identified appellant's voice on a recording from appellant's telephone call from jail in which he states "[a]ll I really have to worry about is that robbery because I'm on camera." In the call, someone then asks who did you rob and appellant replied "Little Chris."

Appellant declined to testify at the punishment phase and did not call any witnesses on his behalf. Following the testimony described above, the jury sentenced appellant to ninety-nine years of imprisonment.

## ANALYSIS

### A.    Ineffective Assistance of Counsel

In his first and third issues, appellant contends that he was rendered ineffective assistance of counsel because his trial counsel failed to request (1) a jury instruction on sudden passion and (2) a limiting instruction regarding gang affiliation at the punishment phase.

#### 1.  Standard of review

Texas courts apply the two-pronged *Strickland* test to determine whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (U.S. 1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting the *Strickland* two-prong test for criminal cases in Texas.). Under this two-part test, appellant must establish that:  (1) counsel's performance was deficient in that his assistance fell below an objective standard of reasonableness; and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687. Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). In order to satisfy the first prong, appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Further, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To prove the second prong, appellant must show that there is a reasonable probability, or a probability sufficient to undermine

confidence in the outcome, that the result of the proceeding would have been different. *Lopez*, 343 S.W.3d at 142.

### 2. Analysis

In his first and third issues, appellant contends that he was rendered ineffective assistance of counsel because his trial counsel failed to request at the punishment phase both a jury instruction on sudden passion (first issue), and a limiting instruction regarding gang affiliation (third issue). Under the first prong of *Strickland*, the appellant must show that his attorney's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms and according to the necessity of the case. *Strickland*, 466 U.S. at 687–88. With respect to the first prong, the record on appeal must be sufficiently developed to overcome the strong presumption of reasonable assistance. *See Thompson*, 9 S.W.3d at 813–14. Absent an opportunity for trial counsel to explain his actions, we will not conclude his representation was deficient "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Texas procedure makes it "'virtually impossible'" for appellate counsel to present an adequate ineffective assistance claim on direct review. *See Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Robinson v. State*, 16 S.W.3d 808, 810–11 (Tex. Crim. App. 2000)). This is because the inherent nature of most ineffective assistance claims means that the trial court record "will often fail to 'contai[n] the information necessary to substantiate' the claim." *Id.* at 423 (quoting *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997)). As a result, the better procedural mechanism for pursuing a claim of ineffective assistance is almost always through writ of habeas corpus proceedings. *Freeman v. State*, 125 S.W.3d 505, 511 (Tex. Crim. App. 2003).

Here, appellant's motion for new trial was limited to the following two sentences: "Now comes the Defendant in the above cause and by his Attorney, and moves the Court to grant him a

New Trial herein for the good and sufficient reason that the verdict is contrary to the law and the evidence. Wherfore [sic], Defendant prays the Court grant a new trial herein." There is no indication that a hearing was held on the motion, thus appellant did not call his previous trial counsel to testify at the motion for new trial on either of the two ineffective assistance matters he complains about on appeal. As to each, the record is inadequate to conclude that there was no possible reasonable trial strategy for trial counsel's conduct. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005).

Further, even if we did hold that trial counsel's assistance fell below an objective standard of reasonableness, appellant would still need to satisfy the second prong of *Strickland.* Under that prong, the applicant must demonstrate that he was prejudiced by his attorney's performance or that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Thus, to demonstrate harm in this case, appellant must show that had the trial court included an instruction on sudden passion and/or a limiting instruction on gang affiliation, that the jury would have imposed a lesser sentence.

In regard to the sudden passion argument, the jury heard evidence that (1) appellant was seen carrying a gun prior to the shooting and stated that he carried the gun "just in case I have to do me somebody"; (2) there was arguing outside the convenience store to the effect of "we can fight" or "let's box"; (3) two witnesses saw appellant shoot Lewis; (4) both witnesses did not see Lewis in possession of any gun or weapon; (4) one witness did not see Lewis do anything that would have caused him to be shot; and the (5) the police did not locate any evidence that Lewis had a weapon. Also, during the punishment portion of the trial, the jury was presented with evidence of appellant's multiple juvenile adjudications as well as his two adult convictions. In addition, following the punishment phase, the jury found the enhancement paragraph true. As such, appellant would have been subject to the same punishment range—five to ninety-nine

years—whether or not the jury found that sudden passion applied.[1]  Moreover, by rejecting appellant's self-defense issue raised during guilt/innocence, the jury indicated that it did not believe appellant's claim that he shot Lewis out of fear for his life.  *See Wooten v. State,* 400 S.W.3d 601, 609 (Tex. Crim. App. 2013).  As the Court of Criminal Appeals in *Wooten* noted, "[i]t is highly unlikely that a jury that had rejected the appellant's claim that he reasonably believed that deadly force was immediately necessary to defend himself would nevertheless find in his favor on the issue of sudden passion."  *Id.*  Given the jury's previous rejection of self-defense and the evidence the jury had before it, appellant's suggestion that, if the jury had received the sudden passion instruction, it could have decided that Lewis provoked appellant in a manner that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render him incapable of cool reflection is nothing more than speculative.  *See Beltran v. State,* 472 S.W.3d 283, 294 (Tex. Crim. App. 2015) ("To justify a jury instruction on the issue of sudden passion at the punishment phase, the record must at least minimally support an inference: (1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) that he committed the murder before regaining his capacity for cool reflection; and (4) that a causal connection existed 'between the provocation, passion, and homicide.'").  We conclude that appellant has not established a reasonable probability that but for his counsel's failure to request a sudden passion instruction that the jury would have imposed a less harsh sentence as required by *Strickland*.  Accordingly, we overrule appellant's first issue.

---

[1] The punishment range for a first degree felony is imprisonment "for life or for any term of not more than 99 years or less than 5 years."  *See* TEX. PENAL CODE §12.32(a) (West 2011).  If a defendant proves that he caused death under the influence of sudden passion at the punishment phase, then the offense is a felony of the second degree.  *Id.* at 19.02(d) (West 2011).  However, if it is shown on the trial of a felony of the second degree that the defendant has previously been convicted of a felony, then on conviction the defendant shall be punished for a felony of the first degree.  *Id.* at §12.42(b) (West Supp. 2017).

In regard to the gang affiliation argument (third issue), appellant argues that trial counsel failed to request the limiting instruction as set forth in *Beasley v. State*, 902 S.W.2d 452 (Tex. Crim. App. 1995). Appellant argues that the State called a "so called 'gang expert' named Detective B.K. Nelson" and that a large amount of time was spent during the punishment phase with Detective Nelson's testimony. Detective Nelson testified that he had been with the Dallas police department for twenty-four years, a detective for twelve years, and he is currently assigned to the gang unit in which he both documents and identifies gang members for the Dallas police department and the U.S. Marshall's task force. Nelson testified that BFL-304 had well over 150 members, wear the color red, and have committed "every crime known to man" including murder, burglary, assault, criminal trespass and aggravated robbery. Appellant notes that Nelson did not link any of appellant's activities to the gang's activities but "this list happened to be the exact same crimes the State was seeking to prove beyond a reasonable doubt at punishment." Appellant further argues that "[w]ithout the *Beasley* instruction the jury was permitted to consider Appellant's gang affiliation and the types of crimes they routinely commit as evidence of his committing the prior offense at issue." Here, however, Nelson was only one of the eleven witnesses called by the State at the punishment phase. As summarized above, the State called numerous other witnesses who provided evidence of appellant's past convictions. We conclude that appellant has not established a reasonable probability that but for his counsel's failure to request a limiting instruction on gang affiliation that the jury would have imposed a less harsh sentence as required by *Strickland*. Accordingly, we overrule appellant's third issue.

## B. Self-defense

In his second issue, appellant argues that the evidence was legally insufficient for a jury to have found that he did not act in self-defense. We disagree.

### 1. Standard of review

When examining the legal sufficiency of the evidence, we consider all evidence in the light most favorable to the verdict and whether a rational jury could have found each element of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In self-defense cases, a court must determine whether, after reviewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The duty of the reviewing court is to ensure the evidence the State presented supports the jury's verdict and the State has presented a legally sufficient case of the offense charged. *Id.*

### 2. Applicable law

A person commits murder if he intentionally or knowingly causes the death of an individual or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE §19.02(b)(1)-(2). A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a) (West 2011). A person is justified in using deadly force against another (1) if he would be justified in using force against another under section 9.31 and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect

–11–

himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a) (West 2011).

The defendant has the initial burden of producing evidence to raise self-defense, and the State then has the final burden of persuasion to disprove it. *See Saxton,* 804 S.W.2d at 914. The burden of persuasion does not require the production of evidence, only that the State prove its case beyond a reasonable doubt. *Id.* When a fact finder determines the defendant is guilty, there is an implicit finding against the defensive theory. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

### 3. Additional facts

During the trial, Detective Isom from the Homicide Unit of the Dallas Police Department testified about her investigation of this case. When asked about the claim of self-defense made by appellant, the following testimony took place:

[State's Atty.]: In your opinion, why was this not a self-defense case?

[Isom]: There's no clearcut answer as to why Mr. Freeman felt that his life was in danger through the interview that I had with him. Multiple times I asked why he thought his life was in danger. There was a very large difference in weight, as well as size. I also mentioned the lack of weapons to his knowledge that were present.

So at that point, I don't see where a self-defense claim can be made unless I have witnesses or something else that can support that fact. That's why I was asking him for information about people at the scene, was there any names he could recall. However, I was never given any more information to work with at that point.

[State's Atty.]: And, again, we saw on the video, Mr. Freeman indicates that Mr. Lewis, the one who had been shot, had his hands up; is that right?

[Isom]: Yes.

[State's Atty.]: Okay. Never indicated there was a weapon in right hand or left hand?

[Isom]: He said, I don't know.

[State's Atty.]: And he wasn't even hit by Mr. Lewis, according to interview [sic], right?

–12–

[Isom]:  Correct.

[State's Atty.]:  There was no physical altercation whatsoever.

[Isom]:  Correct.[2]

Detective Isom also testified that in her interview appellant stated Lewis was being aggressive and that appellant saw Lewis's hand being lifted and he reacted as a reflex.  Detective Isom also testified that appellant stated that he was in fear of his life.

### 4.  Analysis

Appellant argues that the evidence demonstrated that he was legally justified in using deadly force against Lewis.  Relying on his version of the events, appellant asserts that Lewis got angry and aggressive at him, began yelling, put his fists up, and said he had a gun.  Appellant also stated that when Lewis came at him, he pulled out his gun, and shot it to protect himself.  Appellant stated that he barely knew Lewis but he was scared because he did not know if Lewis was somehow connected to the death threats.  In his brief, appellant argues that Lewis was acting "abnormally aggressively" and this conduct combined with the fear that Lewis could be acting with those who were threatening appellant's life "caused him to react out of fear."

Reacting out of fear, however, is not the same as believing deadly force is immediately necessary to protect yourself against the other's use or attempted use of unlawful deadly force.  The State presented evidence to the jury that (1) appellant was seen carrying a gun prior to the shooting and stated that he carried the gun "just in case I have to do me somebody"; (2) there was arguing outside the convenience store to the effect of "we can fight" or "let's box"; (3) two witnesses saw appellant shoot Lewis; (4) both witnesses did not see Lewis in possession of any gun or weapon; (4) one witness did not see Lewis do anything that would have caused him to be

_____

[2] The jury watched appellant's interview with Detective Isom during the trial.

shot; and the (5) the police did not find any evidence that Lewis had a weapon. In addition, as stated above, Detective Isom testified that she did not believe appellant's self-defense argument because (1) there was no "clearcut answer as to why Mr. Freeman felt that his life was in danger;" (2) there was a very large difference in weight and size between appellant and Lewis;[3] (3) no weapons were recovered around Lewis; (4) Lewis had his hands up before he was shot; (5) and there was no physical altercation between Lewis and appellant.

The jury was the sole judge of witness credibility and the weight to be given to the witnesses' testimony. The jury was free to accept or reject the defensive evidence. Considering all of the evidence in the light most favorable to the verdict, we conclude a rational jury could have found appellant guilty of all of the elements of the offense beyond a reasonable double and rejected his self-defense claim. We overrule appellant's second issue.

## C.    Modification of Judgment

In the State's sole cross-point, it requested modification of the judgment to reflect appellant's plea of not true to the enhancement paragraph alleged by the State. At trial, the court noted that the State had filed a notice of enhancement alleging that he had a prior adjudication for burglary of a habitation. When asked by the trial court how he plead to the enhancement paragraph, appellant answered not true. The final judgment, however, listed the plea to the enhancement paragraph as "true." This Court has the power to modify incorrect judgments when the necessary date and information is available to do so. *See* Tex. R. App. P. 43.2(b); *Abron v. State*, 997 S.W.2d 281, 282 (Tex. App.—Dallas 1998, pet. ref'd). Accordingly, we sustain the State's cross-point and modify the trial court's judgment to change the plea to the enhancement paragraph to "not true."

---

[3] Detective Isom testified that appellant was approximately 6'1'' and 200 pounds. Candace Schoppe, a forensic pathologist at the Dallas County medical examiner's office, testified that Lewis was approximately 5'6" and 146 pounds.

**CONCLUSION**

On the record of this case, we modify the trial court's judgment and affirm as modified.

/David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
170311F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

COREY FREEMAN, Appellant

No. 05-17-00311-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F16-75412-H.
Opinion delivered by Justice Evans.
Justices Lang-Miers and Schenck participating.

Based on the Court's opinion of this date, we **MODIFY** that portion of the trial court's judgment that states "Plea to 1st Enhancement Paragraph: TRUE" to read "Plea to 1st Enhancement Paragraph: NOT TRUE."  As modified, the trial court's judgment is **AFFIRMED**.

Judgment entered this 20th day of August, 2018.